43  371
91  398

43  371
95  614

43  371
113  44

43  371
147  407

[No. 2,264.]

ALFRED SMITH *v.* JAMES O'HARA ET AL.

APPROPRIATION OF WATER.—If the first appropriator of water takes only a part of the quantity flowing in a stream, another may afterward appropriate the remainder, and if the first appropriates the water only during certain days in the week, another may afterward take during the remaining days of the week.

SALE OF A DITCH.—The sale of a ditch used for appropriating water must be evidenced by a deed. Such sale cannot be proved by parol evidence.

PRIOR APPROPRIATION OF WATER.—One who enters into the possession of a ditch used for appropriating water, under a verbal sale made to him of the same, does not succeed to the rights of the seller, so as to claim the benefit of the seller's prior appropriation of the water flowing in the same, but must date his appropriation from the time he enters into possession.

APPEAL from the District Court of the Fifth Judicial District, Tuolumne County.

The plaintiff alleged in his complaint that he and his grantors, since 1851, had owned a ditch known as Woods' Ditch, and had, until prevented from doing so by defendants, appropriated in it all the night and Sunday water flowing in Woods' Creek, to the extent of eighty-four inches, and had also appropriated in it all the day water, to the extent of eighty-four inches, except the first twenty-five inches flowing down the same; that plaintiff became the owner of said property in 1868, and that defendants had diverted said waters and appropriated the same, and threatened to con-

tinue to do so. Judgment was asked for damages and a perpetual injunction.

The defendants were miners, who were using the water in Woods' Creek for mining purposes, and claimed that they had located their mining ground before the water was appropriated in the ditch.

The Court gave the jury the following instructions:

"That if at the time Woods constructed his ditch the waters of Woods' Creek had to a certain extent been used by miners at work in the bed and banks of said creek in the working of their mining claims, they making no claim to the use of the waters of said creek on Sundays or in the night-time, then Woods might, during Sundays and the night-time, take for his own use, for a useful purpose, the waters of said creek, and turn them into his ditch, to be used elsewhere than in the bed or banks of said creek; and if you believe, from the evidence, that such use and appropriation of the waters of Woods' Creek was acquiesced in by the said miners, Woods and the miners mutually using the waters of said creek in the manner and at the times indicated, then Woods, by such appropriation, followed by a continued use of the same, would acquire such a right to the use of the waters of said creek during Sundays and night-time as would forbid the said miners, without his consent, from taking for their use the waters of said creek during Sundays and night-time, when by such taking they should deprive Woods of the use of the waters by him so originally taken and continuously used for a useful purpose during Sundays and night-time."

The defendants excepted to this charge.

The Court then submitted the following special issues to the jury, which, after they had retired, they answered as follows:

"1st. To how many inches of water is plaintiff entitled of the waters of Woods' Creek during the night-time and Sundays, as against defendants in this action?

"Answer—Eighty-four (84) inches.

"2d. To how many inches of water of Woods' Creek were the miners in Woods' Creek entitled in the day-time, prior to any appropriation of the waters of Woods' Creek by the plaintiff?

"Answer—Twenty-five (25) inches.

"3d. After allowing for the amount of water of Woods' Creek to which you may find the miners of Woods' Creek entitled as against plaintiff, to how many inches of water is plaintiff entitled as against the defendants?

"Answer—Eighty-four (84) inches.

"4th. Did the defendants, between the 1st day of October, 1868, and the 25th day of June, 1869, deprive the plaintiff of the use of any water to which he was entitled as against the defendants?

"Answer—Yes.

"5th. If defendants have deprived the plaintiff of the use of any water to which he was entitled, what damage has plaintiff sustained by reason of such acts of defendants?

"Answer—One hundred and four (104) dollars."

The Court rendered judgment for the plaintiff, and enjoined the defendants from appropriating the night and Sunday water to the extent of eighty-four inches, and any of the day water to the extent of eighty-four inches, after they had first taken out twenty-five inches. The defendants appealed.

The other facts are stated in the opinion.

*Caleb Dorsey,* for Appellants.

After ownership of the locator once attaches by prior appropriation, it continues nights and Sundays, as well as at

other times. Because a party did not use his property at the times when the laws of nature and the law of society require him to rest from his labor, and because he acts in obedience to such laws, is no reason why he should be deprived of his property on account of its non-user during such times. Such a principle would certainly be novel and very unjust. The answer to the question did not tend to prove any appropriation at all, and only tended to confuse and mislead the jury. It was error to have permitted the question to be asked the witness. The mere fact that defendants did not object to plaintiff taking the water when they were not using it, without suspecting or knowing that he intended to claim the water as against them, was no acquiescence on the part of defendants such as would afterwards estop them from claiming the water from plaintiff. The silence of defendants under such circumstances was no estoppel which would prevent them from asserting their right to the water during the night-time and Sundays. In order to create an estoppel by silence, there must be something fraudulent in the silence. The silence must be equivalent to an admission of plaintiff's right to the water, and it must appear that plaintiff relied on such admission and was misled by it. (*Ferris* v. *Coover*, 10 Cal. 63; *Davis* v. *Davis*, 26 Cal. 41.)

*Edwin A. Rodgers,* for Respondent.

Respondent contends that there may be an appropriation of the waters of a stream by A. for a given portion of the time and for a particular purpose, and also by B. for the remainder of the time and for a different purpose, and that such appropriation being recognized and acquiesced in by all parties interested through a series of years, is binding on all parties interested. Again, the right of such appropriation for a given portion of the time is one of the rights upon which the material interests and prosperity of the mining section of the State depends. The fact of such joint

appropriation forms a part of the history of every mining community. Vineyards have been planted and gardens cultivated, dependent entirely for irrigation upon water collected nights and Sundays from streams the waters of which were used for mining purposes during the day-time. Ditches have been dug, as in this instance, at great expense, in good faith, for collecting and subjecting to a useful purpose the night and Sunday waters of a creek which were otherwise running to waste.

By the Court, RHODES, J.:

It is not to be doubted, that the person who first appropriates for mining or other purposes the waters of a stream running upon the public lands, is entitled to the same, to the exclusion of all subsequent appropriations by other persons for the same or other purposes. The defendants do not question this doctrine, but deny its application to this case.

The Court instructed the jury, in effect, that if the miners who were using the waters of the creek, made no claim to the use of the waters during Sunday and in the night-time, another person might appropriate the water, during such time, to his own use; and if he did so appropriate and continuously use the waters, the miners could not thereafter deprive him of the use of the waters during those times to the extent to which he had appropriated them. The jury found that the plaintiff was entitled to eighty-four inches of the water of Woods' Creek during the night-time and Sundays, as against the defendants. It results from the proposition first stated, that if the person who first appropriates the waters of a stream only appropriates a part, another person may appropriate a part or the whole of the residue; and when appropriated by him his right thereto is as perfect, and entitled to the same protection, as that of the first appropriator to the portion appropriated by him. In *Ortman v.*

*Dixon,* 13 Cal. 34, it was decreed that the defendants were entitled to the waters of the creek for the use of their mill; that the plaintiffs were then entitled to sufficient water to fill their ditch, No. 2; and that the defendants were next entitled to the residue to fill their ditch, No. 3. The cases are very numerous which affirm, or assume without question, this doctrine. It is usually the case that the amount of water to which the several persons claiming its use are entitled, is measured by inches, according to miner's measurement, or by the capacity of the ditches through which it is conducted from the stream, but there is no reason why the amount may not be measured in some other mode. They hold the amount appropriated by them respectively as they would do had the paramount proprietor granted to each the amount by him appropriated. The right to use the waters, or a certain portion of them, might be granted to one person for certain months, days or parts of days, and to other persons for other specified times. An agriculturist might appropriate the waters of a stream for irrigation during the dry season, and a miner might appropriate them for his purposes during the remainder of the year. And so may several persons appropriate the waters for use during any different periods. There is no difference in principle between appropriations of waters, measured by time, and those measured by volume.

The plaintiff adduced no written evidence of the transfer to himself of the right to the ditch through which were conveyed the waters claimed by him, from those who had constructed it, or been in possession of it, but he proved by oral testimony that it was sold to him by Woods, the person, or one of the persons, who had constructed and used it. This evidence was properly stricken out by the Court. But the Court, in instructing the jury in respect to the appropriation and use of the waters of the creek, charged them in respect to the relative rights of *Woods* and the miners who used the waters of the creek. This was calculated to

mislead the jury, by giving them the impression that the plaintiff had succeeded to the rights of Woods. The instruction, in that respect, was erroneous, and the defendants, in order to correct that erroneous impression, were entitled to have the instruction given which was asked by them, to the effect that the plaintiff could not connect himself with the rights acquired by Woods and Sedgwick except by deed. We cannot say that this error did not injure the defendants, for it cannot be ascertained from the record whether the jury found for the plaintiff upon his own appropriation and use of the waters, or upon that of Woods and Sedgwick.

Judgment and order reversed, and cause remanded for a new trial.