[Filed June 24, 1891.]

ELIZABETH HINDMAN v. GEORGE RIZOR.

PUBLIC LANDS—RIPARIAN RIGHTS.—One who purchases lands from the United States after the whole or some part of the water of a natural watercourse running through such land has been appropriated by some one else, takes subject to the rights acquired by such prior appropriator.

PUBLIC LANDS—SETTLER'S RIGHTS—TRANSFERS.—A settler on public land has a valuable property right, which being only possessory in its nature, not lying in grant, does not require a formal deed of conveyance to effect a sale or transfer thereof; so that any mode of sale or conveyance which effects a transfer of the possession from the vendor to the vendee is sufficient to pass the right.

OCCUPANCY—APPURTENANCES.—When a settler on public lands appropriates water for necessary purposes connected with the occupancy of the land, it becomes appurtenant thereto, and may be sold or transferred with the possessory right by like means, under the rule that where a thing is granted as it is then used and enjoyed, there is included by implication every easement necessary to the reasonable enjoyment of the property which has been in use by the owner for the benefit of the granted premises at and prior to the time of the grant.

APPROPRIATION OF WATER—REASONABLE TIME.—It is necessary to the validity of an appropriation of water that it be made within a reasonable time for some beneficial purpose, either existing or contemplated in connection with the use of land to which it is appurtenant, and the quantity taken must not be greater than is required for the purpose.

Baker county: JAMES A. FEE, Judge.

Plaintiff appeals. Reversed.

*J. L. Rand,* for Appellant.

The maxim of the law which this defendant and every riparian proprietor is bound to respect, as regards his rights to the water, is to use it so as not to damage another. (*Shrewsbury* v. *Smith,* 12 Cush. 177; Ang. Waters and Water Courses,

7 ed. § 97; *Davis* v. *Winslow,* 51 Me. 291; 81 Am. Dec. 573; *Embrey* v. *Owen,* 6 Exch. 353.)

A riparian proprietor has the right to use the waters of a stream, and divert its waters, if he does not do so to a material and appreciable degree and leaves sufficient for the use of other riparian proprietors, but not to such extent as to materially or appreciably lessen the stream. (*N. Y. Rubber Co.* v. *Rothery,* 32 N. Y. S. R. 905; Gould on Waters, § 204; Pom. Rip. Rights, §§ 8, 9, 143, 144.)

A riparian proprietor of land bordering upon a running stream has a right to the flow of its waters as a natural incident to his estate, and they cannot be lawfully diverted without his consent. (*Sturr* v. *Beck,* 133 U. S. 541; Gould on Waters, § 205.)

The use of the waters of a running stream for irrigation is not an ordinary use, but is an extraordinary use, and the right to use is not identical or co-extensive with the right to use it watering cattle or for other like domestic purposes. (*Learned* v. *Tangeman,* 65 Cal. 334; Pom. Rip. Rights, § 138.)

The right of a prior appropriator to divert water from a stream and use the same for a beneficial purpose, such as irrigation, was recognized and protected, and the continuance of the right was provided for by the act of Congress of 1866, and that of 1870 in amendment thereto, and this right has always been recognized by the courts of the Pacific States. (*Kaler* v. *Campbell,* 13 Or. 596; *Basey* v. *Gallagher,* 20 Wall. 670; *Atchison* v. *Peterson,* 20 Wall. 507; *Jennison* v. *Kirk,* 98 U. S. 453; *Broder* v. *Water Co.* 101 U. S. 274; *Faull* v. *Cooke,* 19 Or. 455; 20 Am. St. Rep. 836; Gould on Waters, §§ 228–240; *Osgood* v. *Eldorado Water etc. Co.* 56 Cal. 571; *Lansdale* v. *Daniels,* 100 U. S. 118; *Lux* v. *Haggin,* 69 Cal. 255; *Barnes* v. *Sabron,* 10 Nev. 217; *Ware* v. *Walker,* 101 U. S. 274; U. S. Rev. Stat. §§ 2339 and 2340.)

We claim that in order to avail himself of the plea of prescription, defendant should show an exclusive and uninterrupted use and enjoyment of the waters claimed by him, and that

plaintiff herein must have had knowledge thereof, and acquiesced therein. (*Huston* v. *Bybee*, 17 Or. 140.)

*M. L. Olmstead*, for Respondent.

Defendant's right as a riparian proprietor began on February 18, 1887, the date of his settlement on his homestead. (*Faull* v. *Cooke*, 19 Or. 455; 20 Am. St. Rep. 836.)

Plaintiff's right to the waters of Alder creek date only from the time of the patent under the pre-emption laws, or at most they cannot relate back any farther than the date of final proof made under the pre-emption laws. (*Farley* v. *Spring Valley M. & I. Co.* 58 Cal. 142; *Frisbie* v. *Whitney*, 9 Wall. 187; *Hutton* v. *Frisbie*, 37 Cal. 475; *West. Pac. R. R. Co.* v. *Tevis*, 41 Cal. 489.)

Plaintiff cannot claim any rights or interests by virtue of any old appropriation connected with the ditch. Titles to ditches and water rights must be shown by deeds of conveyance; any attempt to transfer a ditch or water right by anything else than a deed works a forfeiture. (*Smith* v. *O'Hara*, 43 Cal. 371; *Roswell* v. *Hall*, 3 Nev. 507; *Chitovich* v. *Davis*, 17 Nev. 133.)

There can be no adverse user or right by prescription. The title to these lands was in the government of the United States, and no right of prescription runs against the government. (*Gibson* v. *Chouteau*, 13 Wall. 92; *Burgess* v. *Gray*, 16 How. 48; *Oaksmith* v. *Johnston*, 92 U. S. 343.)

Borman, who was not a qualified pre-emptor during the time he was occupying the premises under his pre-emption filing, was a trespasser, and his pretended pre-emption claim was a nullity. (U. S. Rev. Stat. § 2261; *Kitts* v. *Austin*, 83 Cal. 167.)

BEAN, J.—This is a suit to enjoin the defendant from diverting the waters of Alder creek, a natural watercourse, which runs through the lands of both plaintiff and defendant. Both parties claim by prior appropriation.

The facts are these: In 1863 the lands through which

Alder creek flows were unsurveyed and unoccupied govern-
ment land, and the waters thereof were free and unappro-
priated.   In the spring of that year, J. W. Cleaver and one
Peters settled upon the land now owned by plaintiff; and
for the purpose of rendering it productive and useful for
agricultural and horticultural purposes, entered upon the
unoccupied government land a short distance above the
land occupied by them and diverted a portion of the waters
of Alder creek, and by means of a ditch conveyed the same
onto their land for irrigating purposes.   Cleaver and Peters
continued to occupy and cultivate the land, using the waters
appropriated by them until 1865, when they sold their
possessory rights and improvements.   From the time of
the sale by them until 1881, the land, improvements
and water right passed into the possession and occu-
pancy of several different persons, each selling his rights
thereto and delivering possession to the purchaser, but no
complete chain of title by deed of conveyance to either the
land, ditch, or water right, appears in the record.   In 1881,
the property having in this manner passed into the posses-
sion of one Rowley, he filed thereon under the preëmp-
tion law, and after perfecting his title conveyed the land
with its appurtenances on September 15, 1882, by deed to
plaintiff.   In February, 1877, defendant settled upon the
land now owned by him above the land of plaintiff, as a
homestead, and having received his patent, claims the right
to the use of fifty inches of the waters of the creek as against
plaintiff by an appropriation made by him in 1877.   He
claims that because the title of the several parties occupying
the land from Cleaver down to Rowley was acquired by the
purchase of possessory rights merely and not by deed, the
water right was lost and abandoned; that a valid transfer
of a ditch and water right can only be made by deed, and
a verbal sale operates *ipso facto* as an abandonment, and
that consequently his appropriation, made in 1877, was
prior in time and paramount in right to that of plaintiff,

which in any view could only date from Rowley's settlement in 1881.

This is the only question necessary for us to consider. If plaintiff has connected herself by a proper title with the rights acquired by Cleaver and Peters to the waters of Alder creek, her rights are unquestionably superior to those of the defendant, for whoever purchases land from the United States after the whole or some part of the water of a natural watercourse running through such land has been appropriated by some one else, takes subject to the rights acquired by such prior appropriator. (*Kaler* v. *Campbell*, 13 Or. 596; *Lux* v. *Haggin*, 69 Cal. 255.) If, however, her rights only date from the settlement of Rowley in 1881, the appropriation made by defendant in 1877 gives him a superior right to the quantity actually appropriated.

It is undisputed from the evidence that the land owned by the plaintiff has been improved, cultivated and farmed each year by the occupants and owners thereof from the time of Cleaver's settlement in 1863 to the commencement of this suit, and the water appropriated by Cleaver and Peters has been used through the ditch constructed by them for the necessary irrigation of the land each year. In fact, without the use of this water the land would be of comparatively little value for agricultural or horticultural purposes, and the possessory rights thereto would not have sold for the several amounts disclosed by the record. It is dry and arid land, and can only be successfully or profitably cultivated by means of proper irrigation. It had been so improved that in 1881 Rowley paid to the occupant the sum of fifteen hundred dollars for his possessory rights. Each owner and occupant of the land has used and claimed to own the water right acquired by the appropriation of Cleaver and Peters, and has delivered the possession thereof with the other improvements on the land to his successor in interest as an incident to the principal thing sold.

A settler upon the public land has a right thereto as against every person except the government, and when such

settlement is made with the view of obtaining title, such right is a valuable property right, which the courts will protect and enforce. (*Kitcherside* v. *Myers*, 10 Or. 21; *Jackson* v. *Jackson*, 17 Or. 110.) The right of such a settler being property, he may sell and transfer it so as to pass his right thereto, and, except as against the government, vest the rightful possession in the purchaser. This right being a possessory one merely and not lying in grant, does not require a formal deed of conveyance in order to effect a sale or transfer thereof. The settler does not acquire a title to the land by the act of settlement, but only the right to one upon his complying with the provisions of the law governing the sale and disposition of the public lands. His occupation and improvement with a view to preëmption do not confer a vested right in the land so occupied, but do confer a preference over others in the purchase of such lands by the *bona fide* settler, which will enable him to protect his possession against other inviduals. He has no interest in the land which he can convey, but only in the possessory right thereto, and any mode of sale or conveyance which effects a transfer of the possession from the vendor to the vendee is sufficient to pass his possessory title. When such a settler appropriates water for the necessary irrigation of the land occupied by him, it becomes as much a part of his improvements as his buildings or fences, and can be sold and transferred with his possessory right in the same way. The principal subject matter of such a sale and purchase is the possessory right to the land, and the consequent preference over others in the purchase of such land from the government; and such a sale followed by possession taken thereunder vests the possessory right in the purchaser except as against the government, and he succeeds to the rights of the settler in the possession of the land and improvements. The water right being a necessary incident to the complete enjoyment of the land, the same principle which sustains a verbal sale of the possessory right to the land will also support a verbal sale of the water right in

connection therewith, so as to enable a purchaser to main-
tain a suit against a stranger for interfering with the same.
The water when appropriated and used for irrigation
becomes an incident to the land, and the transfer of the
possessory rights thereto carries with it the water unless
expressly reserved. The general rule is, that where a party
grants a thing as it is then used and enjoyed, he by implica-
tion grants all those easements which the grantor can con-
vey which are necessary to the reasonable enjoyment of the
granted property and have been and are at the time of the
grant used by the owner for the benefit of the granted
premises, and if the grantor wishes to reserve any right over
the easement he must reserve it expressly. (Gould on
Waters, § 354; *Cave* v. *Crafts*, 53 Cal. 135.)

This rule we think is as applicable to the transfer of
possessory rights to public land as to any other species of
property. Thus, if a mill be erected upon public land and
water appropriated therefor, the sale of the mill and transfer
of the possessory right to the land passes the water right to
the vendee. (*McDonald* v. *Bear River Co.* 13 Cal. 220.) So
the fact that the owner of the lower land acquired title through
purchase of possessory rights merely and not by deed, does not
affect his title to the water rights, as they pass appurtenant to
the land. (*Geddis* v. *Parrish*, Wash. March, 1889, 21 Pac.
Rep. 314.) So if a settler upon the public lands under the
homestead law constructs a ditch for the purpose of conveying
water onto his land for irrigating purposes, such ditches and
water right become part of the realty and are not severable
therefrom, and are exempt from sale under execution. (*Faull*
v. *Cooke*, 19 Or. 455; 20 Am. St. Rep. 836.)

The fact that the settlers on this land, after it was sur-
veyed and prior to its passing into the possession of Rowley,
may have formally relinquished their pre-emption filings,
does not of itself operate as an abandonment of the water
right. This was the only means of effecting a complete
transfer of their possessory right to the land and giving
their successors in interest an opportunity to acquire a title

from the government. To constitute an abandonment, there must be an intent to abandon. (*Dodge* v. *Marden,* 7 Or. 456.) Such intent may be inferred from the acts and declarations of the party; for it is only by the acts and declarations of persons that we infer their intentions; but in this case there is nothing in the acts and declarations of the occupants of this land or of the owners of the water right indicating an intent to abandon it; but on the contrary, their acts and declarations unmistakably evince a clear intent not to do so. In fact, counsel for defendant did not claim that there was evidence indicating an intent to abandon, but he claimed that the verbal sale and transfer of this water right operated *ipso facto* as an abandonment thereof, and in support of his position cited and relied on *Smith* v. *O'Hara,* 43 Cal. 371; Pom. Rip. Rights, § 89; Gould Waters, § 234.

The statements by Pomeroy and Gould are based upon the doctrine announced in *Smith* v. *O'Hara.* In that case the plaintiff claimed as purchaser from the prior appropriator of a ditch used for conveying water for mining purposes, and undertook to prove the sale by oral testimony. The court held that a ditch, being an interest in real estate and lying in grant, could only be conveyed by deed, but that doctrine has no application to the case before us. In this case there was no attempt to convey the ditch separate from the possessory right to the land, but only as an incident thereto and as part of the improvements thereon. It was appurtenant to the principal thing sold, and passed as an incident thereto. We do not at this time undertake to question the doctrine that a ditch or canal itself, used for conveying the water to a mine or elsewhere, is an interest in land that can only be transferred and conveyed as in the case of other real estate, but we deny its applicability to the facts in this case.

Having reached the conclusion that plaintiff has succeeded to the title of Cleaver and Peters, and that the appropriation of the waters of Alder creek made by them is prior in right to that of defendant, it only remains to ascer-

tain the quantity of water to which plaintiff is entitled. The evidence on this question is not as clear as we would like. From the best impressions we can gather from the evidence, the amount of water diverted by Cleaver and Peters in 1863 was about eighty inches. This quantity does not seem to have been utilized by them during their occupancy of the land. They had a right to appropriate water sufficient for the present and contemplated necessary irrigation of the land occupied by them, but the amount to which their prior right attached must be restricted to the quantity needed for that purpose. "It thus seems," says Mr. Justice LORD, in *Simmons* v. *Winters, ante,* 35, "that in order to make a valid appropriation of water, it is required to be made for some beneficial purpose then existing or contemplated, and that the amount of water appropriated must be restricted to the quantity needed for the purpose." While Cleaver and Peters could rightfully appropriate water not only for the present but also for the future needs of the land, the water so appropriated must have been utilized within a reasonable time in the purpose for which it was appropriated, or the right thereto was lost. What constitutes a reasonable time is a question of fact depending upon the circumstances of each particular case. From 1863 to 1877, the date of defendant's settlement, there does not seem to have been used for the necessary irrigation of the land now owned by the plaintiff, to exceed fifty inches of the water appropriated by Cleaver and Peters, nor does the acreage of the land in cultivation seem to have been materially increased since that time. This we think was a sufficient length of time in which to make an actual application of the water to the uses intended, and the right to the surplus not so applied became lost and abandoned, so that the amount of water being utilized in 1877, fifty inches, should be the limit of plaintiff's right. Although she has no property in the water of the stream flowing in its natural channel above the point of her diversion, yet she has a most important right over it with respect to such water. She is entitled to have the

water of the stream continue to flow in its usual manner through the natural channel or bed of the stream down to the head of her ditch to the extent or amount of her appropriation without diversion or material interruption during the irrigation season, if she needs that amount of water for the necessary irrigation of her land. She is entitled to have in the natural bed or channel of the stream at the head of her ditch during the irrigating season a sufficient quantity of water for the necessary irrigation of her land, not exceeding fifty inches. While she is entitled to fifty inches of water if necessary for the irrigation of her land, if she does not need that amount, she must allow the surplus to remain in the stream, and cannot complain if it is used by the other settlers on the creek, whether above or below her.

At the time of the commencement of this suit, defendant was diverting all the waters of the creek, while plaintiff's grain, vegetables, fruit and other crops were suffering for want of irrigation.

The decree of the court below will therefore be reversed, and a decree entered here in accordance with this opinion.