37    523
48    323

Argued 24 July; decided 13 August; rehearing denied 12 November, 1900.

## MATTIS *v.* HOSMER.

[ 62 Pac. 17, 632.]

COMPETENCY OF STATEMENTS BY ALLEGED AGENT.

1. In a suit to enjoin the appropriation of water from a creek, testimony that a third party, who lived with plaintiff, made statements recognizing defendant's right to exclusive use of the water, and that at his request defendant permitted plaintiff to use the water for purposes of irrigation, was not admissible as against plaintiff, there being no proof of a general agency.

INCOMPATIBLE USES OF WATER.

2. One party's right to use water for irrigation purposes is not necessarily incompatible with another's right to use the same water in operating a mine, since the diverse uses are generally made at different seasons of the year.

ESTOPPEL BY SILENCE.

3. To make a silent acquiescence operate as an estoppel it must appear that the person against whom the claim is made had some interest to be affected.

METHOD OF TRANSFERRING MINING DITCH.

4. Under Hill's Ann. Laws, § 3833,* declaring that ditches used for mining purposes shall be regarded as real estate during such use, and section 3834,* providing that they shall be governed in their sale and transfer by the law applicable to such property, an interest in a ditch used for mining purposes cannot be transferred except by deed.

WATER RIGHT AS AN APPURTENANCE.

5. The use of water from a stream for a beneficial use in connection with a tract of land makes the right appurtenant to such land, and it passes under a deed thereto.

OUSTER AGAINST COTENANT.

6. In the absence of knowledge by a tenant in common that a cotenant claims the property adversely to him, there is not an adverse possession without an actual ouster or some equivalent act showing an intent to exclude.

DEFECT CURED BY DECREE—ESTOPPEL ON CHANGING CLAIM.

7. Where both parties to a suit involving the right to a ditch based their claims on adverse rights, and neither alleged an appropriation of the water as the foundation of his claim, but the trial was had on the theory that defendant's grantor had appropriated the water and conveyed it as appurtenant to the land, and on appeal a decision was made, based on the theory of an appropriation of the water by plaintiff's grantor, it was too late for defendant to urge, on petition for rehearing, that the complaint did not allege any such appropriation by plaintiff's grantor; the case having been tried through by both sides on the theory of an appropriation, neither party will now be heard to claim otherwise.

SUFFICIENCY OF EVIDENCE—PUBLIC LANDS.

8. Where, in an action to enjoin interference with plaintiff's water right there was uncontradicted evidence that plaintiff's grantor was operating a placer

---

*NOTE.—These sections were repealed in 1898 and re-enacted in a modified form. See Laws, 1898, pp. 16, 18, § 9.—REPORTER.

mine on public land in 1868, at the head of the ditch in question, and was using the water therefrom, and in 1873 made a homestead entry on such land, and in 1878 made final proof of settlement and cultivation, it was sufficient to justify a finding that the land was government land at the time of the appropriation of water by plaintiff's grantor.

TRANSFER OF IRRIGATING AND MINING DITCHES.

9. A ditch used for irrigating purposes is an appurtenance to the land which it waters, but while Sections 3833 and 3834,*Hill's Ann. Laws, were in force a mining ditch could not be transferred except by the formalities required in conveying real property: *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59, and *Turner* v. *Cole*, 31 Or. 154, distinguished.

From Jackson : HIERO K. HANNA, Judge.

This is a suit by John Mattis against Nelson Hosmer and others to enjoin the appropriation of water diverted from a nonnavigable stream, and to recover damages for an alleged trespass. It is stated in the complaint that plaintiff is the owner of one hundred and twenty acres of land in Jackson County, Oregon, through which the west fork of Foot's Creek flows in a northerly direction ; that for more than twenty-two years he and his grantors have owned and been in the possession of a ditch that diverts water from said creek, which is used to irrigate his land, and to operate during the rainy season a placer mine thereon ; and that the defendant Nelson Hosmer on December 16, 1896, posted a notice on said land to the effect that he claimed said ditch and the use of the water flowing therein, and on January 24, 1897, he and

---

*NOTE.—Sections 3833 and 3834, Hill's Ann. Laws, were enacted 29 October, 1870, and repealed 14 October, 1898, by an act which repealed several sections relating to mines and substituted other provisions therefor : Laws, 1898, pp. 16, 18. Section 9 of the new act covers the subject of ditches. The old sections, so far as involved in this case, are here reprinted for convenience of reference, together with section 9 of the new act. Section 3833. "Ditches used for mining purposes and mining flumes, permanently affixed to the soil, be and the same hereby are declared real estate during the time the same shall be used for that purpose," etc. Section 3834. "The laws relative to the sale and transfer of real estate, and the application of the liens of mechanics and laborers therein, be and they hereby are made applicable to said ditches and flumes," etc. Laws, 1898, p. 16, section 9. "Ditches and mining flumes, permanently affixed to the soil, are hereby declared to be real estate," etc.—REPORTER.

his codefendants unlawfully destroyed plaintiff's flumes, to his damage in the sum of $100. The defendants deny the material allegations of the complaint, and aver that Hosmer was the owner of certain lands joining plaintiff's on the north, and that for more than fifteen years he and his predecessors have owned and been in the adverse possession of said ditch, and have appropriated all the water flowing therein, and also from certain gulches, to the irrigation of his land and to the operation of placer mines. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree that Hosmer was the owner of said ditch, and entitled to the use during the irrigating season of one-half the water flowing in the creek at the head of the ditch, and during the mining season to the whole thereof, and also to all the water flowing in said gulches, and plaintiff appeals.                              MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Davis Brower.*

For respondents there was a brief and an oral argument by *Mr. James R. Neil.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The testimony shows that in 1867 John Dick, James Hand, M. Winegardner, and John Pearson constructed the ditch in question from a point on the west fork of Foot's Creek to its confluence with Salt Creek, a distance of about three miles, and diverted water from the former stream, which they used about two months to operate a placer mine, each owning an equal interest in the ditch and water right. This mine having proved unremunerative, Winegardner sold his interest in the ditch and water

right to Pearson, who in 1868 transferred his interest therein to one Orin Weare, who, with Hand, was then engaged in working a placer mine on public land at the head of the ditch, using water therefrom for that purpose. Hand, after working in the mine on Foot's Creek about three years, sold his interest in the ditch and water right to one Silas Draper, who operated the mine with Weare until about 1873, when the latter, concluding that the land was not valuable for its minerals, made a homestead entry thereon, but did not irrigate it thereafter; for, having taken charge of a band of sheep at Evans Creek, he returned to his claim in the irrigating season about every six months, where he remained only a day or two at a time, so as to avoid an abandonment thereof (Rev. St. U. S. § 2297); and, having made final proof of his settlement and cultivation, he, on April 22, 1879, conveyed the premises, with the appurtenances, to the plaintiff, who has ever since used a part of the water from said ditch to irrigate his crops, and for four years immediately preceding the commencement of this suit used the water therefrom to operate a placer mine on his land. The defendant Nelson Hosmer on September 18, 1879, secured from George W. Lance a deed conveying certain land, a ditch constructed thereto from the west fork of Foot's Creek across the north boundary of plaintiff's land, and the right to use for the purpose of irrigation one-half of the water flowing in the creek at the head of said ditch. In 1868 Dick sold his interest in the ditch, which he helped to construct, to one Alexander Orme, who, in 1877, having secured whatever interest Draper had therein, made a homestead entry on one hundred and sixty acres of land, across which the ditch was dug; and in 1879, claiming to be the sole owner of the ditch and water right, he sold the same and relinquished his homestead to one Charles T. Anderson, who,

on April 12, 1881, transferred the same by bill of sale to Hosmer, who thereupon filed upon the land so relinquished, changed his point of diversion from the Lance ditch to the old ditch near the south boundary of plaintiff's land, to enable him to conduct the water to a greater elevation, and for more than fifteen years he has constantly used the water flowing in the ditch to irrigate his crops.

1.   It is contended by plaintiff's counsel that the testimony shows that his client was in the exclusive possession of the old ditch, and used the water flowing therein to irrigate his crops, from the time he secured Weare's deed until the point of diversion was so changed, after which Hosmer used the water by his permission, and never made any claim thereto until December 16, 1896, when he posted a notice to that effect ; and hence the court erred in finding, in effect, that since Hosmer took possession of the ditch he had expressly permitted the plaintiff, at his request, to use the water to irrigate his garden and growing crops.   George W. Lance, as defendants' witness, testifies that prior to executing the deed to Hosmer he owned the first right to the use of the water in the west fork of Foot's Creek, and that in 1879, the water therein becoming low, he discovered that plaintiff was diverting it, which he forbade, and took out the box used therefor. This testimony is not contradicted in any manner, and hence we conclude that Hosmer secured by Lance's deed the right to use one-half of the water flowing in the creek, for irrigation.   This deduction is strengthened by the circumstance that Weare never used any water to irrigate the crops on his homestead after filing thereon, from which it may be reasonably inferred that he knew that Lance's predecessor enjoyed the superior right to the use of the water for irrigation, and that plaintiff took by his deed no greater interest in the premises than his grantor pos-

sessed. Hosmer, having the superior right to the use of the water, is entitled thereto, unless deprived thereof by plaintiff's adverse use. Some of the testimony upon which the finding complained of is predicated was admitted over objection, and is wholly incompetent. Thus, without proving any general agency, several witnesses were permitted to testify that one Lewis Silbereisen, who lived with the plaintiff, made statements which would seem to recognize Hosmer's right to the exclusive use of the water in the old ditch, and that at Silbereisen's request Hosmer permitted the plaintiff to use the water to irrigate his crops whenever it could be spared by him for that purpose. This testimony, with that of other witnesses whose authority to speak for the plaintiff upon this subject was not established, we are compelled to disregard.

Considering the admissible testimony on this branch of the case, Mrs. Hosmer, as a witness for defendants, testifies that on a certain Sunday, about nine years prior to the trial, the plaintiff, at their house, requested her husband to let him have the use of the water to irrigate his garden. Hosmer, as a witness in his own behalf, corroborates his wife's testimony in this respect, and also testifies that on another occasion, as he was going to the head of the ditch, the plaintiff asked him for the use of the water to irrigate his crops. The plaintiff denies the requests so imputed to him, and testifies that he permitted Hosmer to use the water from the ditch to irrigate his crops. It will thus be seen that the testimony from which the finding adverted to was made is conflicting and irreconcilable ; but the court below had the advantage of seeing the witnesses and of hearing them testify, thereby being enabled to observe their manner and bearing while under examination, and hence is better able to reach a correct conclusion respecting a disputed question of fact

than this court can possibly be from an inspection of the transcript. To have reached a different conclusion would, in our judgment, have been against the weight of evidence ; for six uncontradicted witnesses testify that they are acquainted with the plaintiff's general reputation for truth and veracity in the vicinity in which he lives, and that such reputation is bad. From a careful examination of the testimony, we are satisfied that, Lance having conveyed to Hosmer the use of one-half of the water in the creek, each is entitled to the use of a moiety thereof, to irrigate his cultivated lands, and that plaintiff is not entitled to the use of any water therefrom until the needs of the prior appropriators are fully supplied ; and hence that part of the decree which gives Hosmer one-half of the water flowing in the creek at the head of the ditch during the irrigating season must be affirmed.

2.   Another question to be considered is the relative rights of the parties to the use of the water flowing in the creek during the winter or mining season.   The use of water for irrigation is not necessarily incompatible with the use thereof for mining, for the growth of plants in the arid region is stimulated by the application of water in the spring and summer to the soil which produces them, while the separation of gold from the baser material in which it is imbedded, by means of water secured from small streams, is usually accomplished with better results when prosecuted in the rainy or winter season ; and, this being so, the agriculturist and the miner might own and enjoy separate uses of water from the same stream without interferring with each other's rights. The appropriation of water to a beneficial use is founded upon the rule of necessity, which, when satisfied, becomes the measure of the right, whereupon subsequent appropriators may use the surplus of that to which the.

prior appropriator is entitled, when not necessary to his use : *Ortman* v. *Dixon*, 13 Cal. 34 ; *McKinney* v. *Smith*, 21 Cal. 374 ; *Smith* v. *O'Hara*, 43 Cal. 371 ; *Edgar* v. *Stevenson*, 70 Cal. 286 (11 Pac. 704); *Barnes* v. *Sabron*, 10 Nev. 217.

3.  Hosmer's right to the exclusive use of the water for mining purposes is based upon the assumption that Weare transferred his interest in the ditch and water right to Draper, the only evidence of which is the testimony of Alexander Orme to that effect.  This witness, on cross-examination, in answer to the question, "How do you know that Draper got Weare's interest?" said : "Draper told me so.  He explained it to me.  Q. Is that the only way you know whether Draper owned any of that ditch,—simply what he told you?  A. That is all ; yes."  It will be remembered that Weare secured from Pearson the right to use during the mining season an undivided one-half of the water in the old ditch, and having enjoyed that right about five years, in operating a placer mine upon the land to which he thereafter secured a title, the water was thus appropriated to a beneficial use ; and hence the turning point, so far as it relates to the use of the water for mining purposes, is whether such right was conveyed to plaintiff as an appurtenant to the land, or was transferred to Draper, from whom it passed by *mesne* transfers to Hosmer.  The plaintiff, as a witness in his own behalf, testifies that when he made a bargain to purchase his land Weare told him that the ditch belonged to the premises and was his property, and that Draper stood by and said nothing. Alexander Orme testifies that he purchased Draper's interest in the ditch and water right in 1877, and, as such purchase was made before plaintiff secured his deed, Draper had no interest in the property, and his

silence cannot be construed as an estoppel against Hosmer, who succeeded to whatever interest he had therein : 2 Herman, Estop. § 939.

4. At the time it is claimed that Weare transferred his interest to Draper, the statute then in force provided that ditches, during the times they were used for mining purposes, were to be regarded as real estate, and, in their sale and transfer, governed by the law applicable to that class of property : Hill's Ann. Laws, §§ 3833, 3834.

5. It does not appear that Weare ever received any deed to an undivided one-half or other interest in the ditch and water right from Pearson, but as Mattis and Hosmer both assert title thereto from Weare, as a common source, they are estopped from denying his title : Herman, Estop. § 593. Notwithstanding mineral lands are not subject to entry and settlement under the provisions of the homestead law of the United States (Rev. St. U. S. § 2302), George W. Bailey, plaintiff's witness, who lived on the west fork of Foot's Creek, from 1866 to 1880, testifies that from 1868, for about ten years, Weare, having cleaned out the old ditch at its upper end, used water therefrom to operate his mine, and that he continued to use the water for mining purposes more or less every year while the land remained in his possession. This shows that Weare applied the water to the land during the mining seasons, thereby making it appurtenant to the premises. No evidence was offered tending to show that Draper secured a deed from Weare, and as he could not be deprived of his interest in the ditch during the time it was used for mining purposes, except by his deed, his title thereto was not transferred to Draper, but passed, as an appurtenant to the land, by his deed to the plaintiff.

6. Alexander Orme supposed, from John Dick's repre-

sentation and sale, that he secured an undivided one-half interest in the ditch and water right; but, Draper having purchased from James Hand an undivided one-fourth interest therein, Orme undoubtedly secured no greater interest by Dick's sale. But having purchased Draper's interest, of which he took possession, and thereafter made a settlement and entry upon one hundred and sixty acres of land as a homestead, across which the ditch was constructed, he had the right to apply the water thereto; and when he surrendered his interest to Anderson, who transferred the same to Hosmer, the latter took an undivided one-half interest in the ditch, as a tenant in common with the plaintiff in the use of the water for mining purposes; and, no evidence having been introduced that plaintiff had knowledge of any adverse claim on the part of Hosmer, his possession cannot be considered adverse, unless there was an actual ouster, or some equivalent act showing an intent to exclude the cotenant: Freeman, Co-Ten. § 221; *Colman* v. *Clements*, 23 Cal. 245; *Unger* v. *Mooney*, 63 Cal. 586 (49 Am. Rep. 100); *Thomas* v. *Glendinning*, 13 Utah, 47 (44 Pac. 652); *Smith* v. *North Canyon Water Co.* 16 Utah 194 (52 Pac. 283). The court having erred in decreeing that Hosmer was entitled to use for mining purposes all the water flowing in the ditch and in the said gulches, the decree will be modified, and one entered here giving plaintiff an undivided one-half of the water therefrom during each mining season.        Modified.

Decided 12 November, 1900.

ON MOTION FOR REHEARING.

MR. JUSTICE MOORE delivered the opinion of the court.

7. A petition for a rehearing of this cause having been filed, it is insisted that inasmuch as the complaint does not allege that Mattis claimed any right to the use of the water of Foot's Creek by appropriation, either by himself or those with whom he was in privity, an error was committed in awarding him, for mining purposes, an undivided one-half of the water diverted from that stream, or flowing from any source into the ditch in question. The plaintiff and the defendant predicate their respective claims to the use of the water upon an adverse right, and neither alleges an appropriation as the foundation of his claim, notwithstanding which the cause was tried upon the theory that Lance appropriated the water of the stream to the irrigation of the land conveyed by him to Hosmer, who took the use of the water as an appurtenant thereto, so that if it had been necessary to allege in the complaint that plaintiff's predecessor appropriated the water to the beneficial use to which it was applied, and to state the quantity of water thus used, it is now too late to question its sufficiency on that ground.

8. It is claimed that the appropriation of water can be made for use upon public land only ; that the transcript contains no evidence tending to show that Weare, plaintiff's predecessor, ever appropriated the water from Foot's Creek to any use upon government land, and, this being so, no presumption should be indulged to that effect. We think the testimony fairly shows that Weare and Hand, in 1868, were engaged in operating a placer mine on public land at the head of the ditch in question, using water therefrom to extract the gold ; that about 1873 Weare made a homestead entry on the land upon

which he had thus been mining; and that from 1868 to 1878, when he made final proof of his settlement upon and cultivation of this land, he used the water, as testified to by George W. Bailey, more or less every year for mining purposes. And, these facts having been established by uncontradicted testimony, no necessity exists for indulging in a presumption that the land upon which Weare mined and thereafter entered under the homestead laws of the United States, whereby he secured a title from the government, was, at the time he appropriated the water thereon, public.

9. The defendant's counsel, invoking the rule announced in the case of *Hindman* v. *Rizor*, 21 Or. 112 (27 Pac. 13), contend that an error was committed in concluding that the transfer from Weare to Draper of his interest in the ditch and water right was void because it was not evidenced by any writing. The statute in force at the time it is claimed such transfer was made presented the anomalous condition of treating a placer claim as personal property, and providing that it might be granted, sold, and conveyed by bill of sale and delivery of possession, but declaring that ditches used for mining purposes were to be regarded as real estate during the time they were used for that purpose, and in their sale and transfer governed by the law applicable to that class of property: Hill's Ann. Laws, §§ 3833, 3834. The ditch in controversy in the case referred to was used for conducting water from Alder Creek to be used in irrigating government land, and not for mining purposes, and hence the rule announced in that case, and followed in *Low* v. *Schäffer*, 24 Or. 239 (33 Pac. 678), *Nevada Ditch Co.* v. *Bennett*, 30 Or. 59 (60 Am. St. Rep. 777, 45 Pac. 472), and *Turner* v. *Cole*, 31 Or. 154 (49 Pac. 971), has no application whatever to the case at bar, in which the evidence conclusively shows that the ditch was constructed, and at

the time of the alleged transfer was being used, for mining purposes. In the enactment of such statute it was probably assumed that the transfer of a ditch used for mining purposes implied a change in its location, or the appropriation of the water to other premises or to different uses, thereby necessitating a severance of the easement from the servient estate, to accomplish which it was provided that the evidence of such conveyance should be more formal than in cases of the transfer of placer mines, which was effected by a bill of sale or a delivery of the possession, thereby carrying the ditch used in operating the mine as an appurtenant thereto. By giving to the statute such construction, we reached the conclusion that Orme secured an undivided one-half interest in the ditch and water right from John Dick and Silas Draper, and that Hosmer succeeded to Orme's interest therein by securing his possessory right to a tract of public land across which the ditch had been constructed, and to which it was appurtenant. When Orme took possession of the ditch and used the water, he supposed he had secured the entire interest therein; but as he took under Dick and Draper, who, the evidence shows, each had an undivided one-fourth interest therein, he secured no greater interest than they possessed. If it had appeared that Weare had abandoned the ditch, and for a year thereafter failed to exercise ownership over the same, or had removed from the state with intent to change his residence, and remained absent one year, without having exercised any ownership over the ditch or water right, his right thereto would have been deemed lost: Hill's Ann. Laws, § 3833. The evidence shows, however, that he used the water for mining purposes more or less every year until he conveyed the premises to Mattis, who testifies that Weare informed him that he was the sole owner of the ditch and water right, which passed to him by the deed, as an ap-

purtenant to the land. There is nothing but hearsay evidence to show that Draper ever owned more than an undivided one-fourth interest in the ditch, and it has not been established that he transferred a greater interest to Orme. These considerations compel us to deny the petition.        REHEARING DENIED.