Decided 21 August, 1906.

**MANN v. PARKER.**

86 Pac. 593.

WATERS—MEASURE OF APPROPRIATOR'S RIGHT.

1. An appropriator of the waters of a stream acquires a right thereto only to the extent of his beneficial use, and beyond the amount necessary for the purpose of the appropriation he has no right to the water in any way.

INJUNCTION BY APPROPRIATOR AGAINST SUBSEQUENT DIVERSION.

2. The issuing of an injunction against a subsequent appropriator of water to prevent the diminution of the supply to the first claimant is somewhat a matter of discretion, affected by the relative importance of the interests involved, the ability of the defendant to respond in damages and other equitable considerations.

WATERS—ENJOINING UNINJURIOUS DIVERSION.

3. An appropriator is not entitled to enjoin the use by subsequent appropriators of water that he cannot use, either because the stream carries more than his appropriation or because it carries so little as to be useless to him—in either case the original claimant is uninjured.

INJUNCTION—DISCRETION.

4. Under the facts as disclosed here a court of equity ought not to enjoin the defendant from using the small amount of water that he needs.

INJUNCTION—DISCRETION—ADEQUATE REMEDY AT LAW.

5. Where the injury, if any, sustained by plaintiff through the diversion of a certain amount of water from a stream by defendant, will be hardly appreciable in comparison with the heavy damage suffered by defendant if the diversion shall be enjoined, and it does not appear that defendant is unable to respond in damages for the injury, an injunction should not be issued.

From Baker: SAMUEL WHITE, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit by P. A. Mann against Charles Parker and Charles M. Chapin to prevent the defendants from diverting the waters of Greenhorn and Greenwood creeks, in Baker County, to the prejudice of plaintiff's prior rights. Greenhorn and Greenwood creeks are small streams uniting a short distance above the head of the plaintiff's ditch. They have their origin in the mountains at an elevation of about 7,000 feet, where,

(48th Or.—21)

from the 1st of November to the following April of each year, the snow is from four to eight feet deep. The ordinary flow of water in them ranges in the aggregate from 3 to 15 inches, except for four or five months in the spring and early summer, during the melting of the snow, when there is a flow from 500 to 1,000 inches. In 1868 one Elliott and his associates built a dam a short distance below their junction and constructed a ditch with a capacity of from 150 to 200 inches, by means of which they diverted water for use in placer mining, and it has been so used every year since by Elliott and his successors in interest, including the plaintiff. On account of the severe winters and the scarcity of water, mining can only be successfully carried on by the use of this ditch during the spring and summer months, extending from the last of March or 1st of April to the middle or last of August, according to the season. During the remainder of the year the plaintiff cannot use any of the water for the purposes for which it was appropriated, but has at various times sold small quantities thereof to quartz mine owners along the line of his ditch. The defendants are the owners of a quartz mine situate between Greenhorn and Greenwood creeks, a short distance above their confluence and about 1,200 feet above the head of plaintiff's ditch. In 1902 they constructed the necessary mills, machinery and other appliances for working their mine, and by means of metallic pipes diverted from three to five inches of water from these creeks for use in their mill and tailrace. In these improvements they expended a large amount of money, so that their investments represented from $150,000 to $200,000 at the time this suit was commenced. About the time they commenced the construction of their mill, or soon thereafter, they were notified by the plaintiff's agent that he claimed the right to all the waters of the two streams and that they would be expected to pay $1.50 a day for the use thereof "as an acknowledgment of his right," and there is testimony tending to show that they agreed to do so, although it is disputed. They commenced the operation of their mill in January, 1903, and continued until September following, when, having refused to pay plaintiff for the use of

the water, this suit was commenced to enjoin them from using such water and from casting debris and tailings into the stream, so that it would be washed into the plaintiff's ditch. A preliminary injunction was issued, and defendants were compelled to and did shut down their mill. Upon the trial the injunction was made perpetual, and the defendants appeal.

For appellants there was a brief and an oral argument by *Mr. A. B. Winfree.*

For respondent there was a brief and an oral argument by *Mr. John L. Rand.*

Mr. CHIEF JUSTICE BEAN delivered the opinion.

1. It is admitted that plaintiff has a prior right as against the defendants to the use of water from Greenhorn and Greenwood creeks to the carrying capacity of his ditch during the placer mining season, and that defendants have no right to interfere therewith. The contention for defendants, however, is that they are entitled to use a sufficient amount to operate their mill during such times as plaintiff is not using it for the purposes of his appropriation. An appropriator of water acquires a right therein only to the extent to which it is applied to a beneficial use, and he cannot claim any more than is necessary for such purposes. "The appropriation of water to a beneficial use," says Mr. Justice MOORE, "is founded upon the rule of necessity, which, when satisfied, becomes the measure of the right, whereupon subsequent appropriators may use the surplus, or that to which the prior appropriator is entitled, when not necessary to his use": *Mattis* v. *Hosmer,* 37 Or. 523 (62 Pac. 17, 632). An appropriation does not confer such an absolute right to the body of water diverted, or to that flowing in the stream, that the appropriator can allow it to run to waste or prevent others from using it for mining or other legitimate uses, when it is not necessary for the purposes of his own appropriation. There may be, therefore, more than one appropriator of the waters of the same stream. The first appropriator has a right to insist that the water shall be subject to his use and enjoyment to the extent of his original appropriation; but in

subordination to this right subsequent appropriators may use the channel or waters of the stream as they may choose, and while enjoying his original right the first appropriator has no cause to complain.

2. What diminution of the quantity will constitute an invasion of the rights of the prior appropriator will, of course, depend upon the facts and circumstances of each case, and whether upon his petition a court of equity will interfere to restrain such diminution "will depend upon the character and extent of the injury alleged, whether it be irremediable in its nature, whether an action at law would afford adequate remedy, whether the parties are able to respond for the damages resulting from the injury, and other conisderations which ordinarily govern a court of equity in the exercise of its preventive process of injunction": *Atchison* v. *Peterson*, 87 U. S. (20 Wall.), 507, 515 (22 L. Ed. 414).

3. Now, applying these principles to the case in hand, the solution is easy. It appears from the evidence that, in order to make any beneficial use of the waters for mining purposes, plaintiff must have from 150 to 200 inches at his mines during the mining season, and from 15 to 20 inches when he "cleans up"; that during a portion, if not all, of the mining season, which, as we have said, extends from the last of March or the first of April to the middle or last of August, there is more water in the two creeks than plaintiff's ditch will carry; and that from the close of the mining season until the following spring there are only from 3 to 15 inches. It is clear, therefore, that plaintiff cannot use the water for the purposes of his appropriation during the dry portion of the summer and fall, or in the winter months, because there is not sufficient, and the diversion of from three to five inches by the defendants during the spring or flush season is no injury to him, because there still remains more water in the streams than his ditch will carry. It would seem, therefore, that the use of the water by the defendants could not injure the plaintiff.

4. But it is claimed that it is necessary for water to flow

into and through plaintiff's ditch at all seasons of the year, to
keep it open and in condition to take up and carry the flush
waters of the spring to his mining grounds, and that such is
a beneficial use and within the limits of his appropriation.
There is some evidence to support this contention. Its force
and effect, however, are largely impaired by the fact that plain-
tiff was willing to sell to defendants from three to five inches
of water before it reached the head of his ditch for $1.50 a day,
"as an acknowledgment of his rights," thus indicating that he
did not regard it as essential to the preservation of his ditch.
And the origin of this litigation is, as we read the testimony,
not so much that the small quantity of water diverted by the
defendants materially interfered with the plaintiff's rights
as a prior appropriator, as that the defendants are unwilling to
pay the plaintiff for water flowing in the stream above the
head of his ditch, whether he can make a beneficial use of it or
not. Under such circumstances we do not think a court of
equity ought to exercise the extraordinary remedy of injunc-
tion and restrain the defendants from using the water for the
operation of their mill.

5. The evidence shows that the injury sustained by the plain-
tiff, if any, by reason of defendants' use, is hardly appreciable
in comparison with the damages which would result to them
from the suspension of the operation of their mine, and if plain-
tiff is damaged he has an adequate remedy at law. There is no
evidence that defendants are not responsible and capable of
answering for damages which their use of the water will pro-
duce, if any, to the plaintiff. There is no claim on the part
of the defendants that they have a right to dump their tailings
into the stream above the head of plaintiff's ditch and they
have no purpose or intention of doing so, and therefore injunc-
tive relief is unnecessary for that purpose.

The decree is reversed, and the complaint dismissed.

REVERSED.