CUSTER, APPELLANT, *v.* MISSOULA PUBLIC SERVICE CO., RESPONDENT.

(No. 6,850.)

(Submitted December 2, 1931. Decided December 16, 1931.)

[6 Pac. (2d) 131.]

138

*Mr. Elmer E. Hershey,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Murphy & Whitlock,* for Respondent, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The question in this case is the sufficiency of plaintiff's complaint. The court sustained a general and special demurrer thereto, upon which it entered judgment in favor of defendant, and plaintiff appealed.

The following allegations, in substance, appear in the complaint: Plaintiff is the owner of the Bandmann Ranch, which is described by legal subdivisions. A portion of the ranch was sold by Daniel E. Bandmann, a predecessor in interest of plaintiff, to A. H. Wethey, a predecessor in interest of defendant, upon which a dam (across the Missoula or Hell Gate River), called the Clark dam, was built. A part of the consideration for the conveyance was that Bandmann "should have 500 inches of water from the top of said dam when the same was constructed." On November 3, 1910, the Clark-Missoula Power Company, successor in interest of Wethey and predecessor in interest of defendant, executed a deed to plaintiff's predecessor whereby it granted, bargained, sold, and conveyed the right to the use of the surplus water from the top of the Clark dam to the extent of 500 inches thereof, for use for irrigation purposes upon the Bandmann Ranch. The dam when built had a surplus of more than 500 inches flowing over the top thereof, and on or about May 25, 1911, plaintiff by his predecessor in interest placed a concrete head-

gate on the top of the dam so as to receive "said 500 inches of water agreed to be delivered to the predecessor in interest of plaintiff at said point," and connected the headgate with a pipe-line carrying the water to the lands known as the Bandmann Ranch, and used the same for irrigation thereon. Plaintiff's predecessor in interest, by placing the headgate on the top of the dam in accordance with the terms of the deed, on or about May 25, 1911, appropriated 500 inches of the Missoula or Hell Gate River for the purpose of irrigating lands of the Bandmann Ranch. At the time of the appropriation of the 500 inches, the same was available at the headgate, and plaintiff's right to the use of the 500 inches became established on the date of the appropriation. The headgate and pipe-line were of sufficient size to carry the 500 inches of water, and the same was carried to the Bandmann lands and used thereupon for irrigation, "and the said 500 inches of water is now a part of the water right appurtenant to said land so owned by plaintiff."

Then follows an allegation as to the arid character of the lands, and that the 500 inches of water, the subject of the action, are necessary and required to properly irrigate the lands; that defendant claims some interest, right, or title to the use of the 500 inches of water taken from the top of the dam as it was constructed on November 3, 1910, "and as appropriated May 25, 1911, as aforesaid, and has notified plaintiff of his intention to deprive plaintiff of the use of said headgate and the taking of any water through the same, and now claims some right in or to the said water so appropriated for use on plaintiff's land as aforesaid," and that the defendant's claim is without right or title.

The deed, annexed as Exhibit A, was between Clark-Missoula Power Company, a corporation, as party of the first part, and Theresa Bandmann, party of the second part, and recites among other things that, whereas on or about the twenty-third day of January, 1905, Daniel E. Bandmann made and entered into a certain agreement with A. H. Wethey, wherein and whereby Wethey agreed that Bandmann "should be allowed

the right to the use of the surplus water from the top of the dam thereafter to be erected'' on a tract of land, describing the same, and whereas at the time of the making of the agreement Wethey ''had located the waters of the Missoula river for various industrial purposes and has since conveyed all of his right, title and interest in and to said water rights in such a way that the party of the first part has become his successor in interest,'' and whereas Bandmann has since died and the party of the second part has become his successor in interest and is entitled to the performance of the terms and conditions of the contract, ''Now, Therefore, Witnesseth: that for and in consideration of the sum of One ($1.00) Dollar, lawful money of the United States, to it in hand paid, and for other good and valuable considerations, receipt of which is hereby confessed and acknowledged, the said party of the first part hereby grants, bargains, sells and conveys unto the said party of the second part, and to her heirs and assigns, the right to the use of the surplus water from the top of the Clark dam, located upon the tract of land hereinabove mentioned, to the extent of five hundred (500) inches thereof, for use for irrigation purposes upon the Bandmann Ranch, so called.''

The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action, and that it is uncertain because (a) it cannot be ascertained therefrom whether the plaintiff means to allege that such right to the use of water as he claims was derived through the deed which is attached to the complaint, or whether he claims a right derived from some other source; (b) that it is impossible to determine whether the plaintiff claims the right to use a certain amount of surplus water over and above the requirements of the defendant, or whether he claims the right to use 500 inches at all times regardless of the needs of the defendant; and (c) that it is impossible to determine therefrom what, if any, surplus over and above the reasonable needs of the defendant it is alleged now exists or existed at the times referred to in the complaint.

Two other grounds of demurrer were set forth under this head, but are not important. It is also set forth that the complaint is ambiguous for all the reasons wherein it is alleged to be uncertain.

The pleader would have saved himself, and others later concerned, much labor if he had stated his facts in ordinary and concise language. (Subd. 2, sec. 9129, Rev. Codes 1921.) In his work on Code Pleadings, section 193, Mr. Phillips says: "It must not be thought that 'ordinary and concise language' is an indifferent phrase, dispensing at once with all care and skill in framing the statement. On the contrary, a system of pleading that dispenses with authoritative forms, and requires each case to proceed upon a plain statement of its operative facts, intensifies the necessity for a clear understanding of the law and the facts of a case, and for an intelligent and accurate use of language by the pleader." The complaint before us is awkward in construction, carrying a suspicion, at least, that the pleader's theory of plaintiff's legal rights is not clear. But "in the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Sec. 9164, Rev. Codes 1921.) In testing this complaint it is necessary to construe its allegations in conjunction with the language of the deed, and both in the light of the law applicable to the facts.

It is clear that as between Wethey and Bandmann, Wethey was the prior appropriator of the waters of the river. Wethey contemplated the construction of a dam whereby the waters appropriated by him should be impounded and put to use. He contemplated that there would be water which he could not use passing over the dam—surplus water. Bandmann needed 500 inches of water for irrigation upon his ranch. Wethey needed some of Bandmann's land upon which to erect the dam and purchased the same from Bandmann, a part of the consideration being that Bandmann "should be allowed the right to the use of the surplus water from the top of the dam thereafter to be erected," as that part of the agreement

is expressed in the deed. This "right" or "use" is limited in the granting clause to 500 inches—"the right to the use of the surplus water from the top of the Clark dam * * * to the extent of five hundred (500) inches thereof, for use for irrigation purposes upon the Bandmann Ranch, so called." Note that the agreement and the resulting deed have to do with "surplus water." There is nothing uncertain or ambiguous about the right of Bandmann and his successors in interest to take the water from the top of the dam.

Surplus water, says Mr. Kinney, in section 321 of his work on Irrigation and Water Rights, second edition, "may be defined as the water which remains in any stream or body of water after all those who are first entitled to the use of its waters have been fully supplied, and there is still some water remaining unclaimed and unappropriated."

In *Quigley* v. *McIntosh*, 88 Mont. 103, 290 Pac. 266, 268, in which we were passing upon an appropriation of water from an adjudicated stream, we had in mind the same idea, saying that the term "surplus water," as used by water-right lawyers, simply means water which is flowing in the stream "in addition to what may be termed adjudicated waters." In that case it was conceded that all the prior rights then claimed were adjudicated by the decree; the proceeding was one in which the claimant, after the entry of the decree, sought to appropriate flood or surplus waters not claimed by anyone else.

It is elementary that the appropriator of the water of a running stream does not own the corpus of the water; he owns only the right to use it. (*Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451.) If the water in a running stream is unclaimed and unappropriated, it would be an absurdity to say that anyone owns the right to use it.

Consequently, surplus water cannot be the subject of sale, for he who attempts to sell it has nothing to sell. (See Wiel on Waters, 3d ed., secs. 481, 547; *Galiger* v. *McNulty*, 80 Mont. 339, 260 Pac. 401; *Norman* v. *Corbley*, 32 Mont. 195, 79 Pac. 1059; *Mann* v. *Parker*, 48 Or. 321, 86 Pac. 598. Compare

*Johnston* v. *Little Horse Creek Irr. Co.*, 13 Wyo. 208, 110 Am. St. Rep. 986, 70 L. R. A. 341, 79 Pac. 22.)

If it was the intention of the Clark-Missoula Power Company to sell to Theresa Bandmann surplus water, the deed to that extent is inoperative. The opposite result is reached if the intention was to convey the right to take "surplus water" from the top of the dam. The manner of taking it is merely incidental. We think the latter construction is compelled, not only by statutory rules of interpretation, but by construing all the terms of the deed together in view of the circumstances shown.

A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties. (Sec. 7534, Rev. Codes 1921.) A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates (sec. 7538, Id.), and however broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract (sec. 7539, Id.). Particular clauses of a contract are subordinate to its general intent. (Sec. 7541, Id.)

The provision in the deed that the party of the first part grants "the right to the use of the surplus water from the top of the Clark dam to the extent of 500 inches thereof" must be read with the other provision that Bandmann should be allowed the right to the use of the surplus water from the top of the dam, and the general tenor of the instrument.

Counsel for defendant recognize the rule that the right to the use of water is limited by the needs of the appropriator, and if there is a surplus above his needs, another may appropriate without regard to the consent of the prior appropriator. Subject to the rule of priority, later comers may make appropriations, each in succession being required to respect the appropriations of all who came before him. Later appropriations may be made of the surplus over what has been appropriated by prior appropriators, or of any use that

does not materially interfere with prior appropriators, says Mr. Wiel. (Water Rights, 3d ed., sec. 302, p. 313.)

It is alleged in the complaint that when the dam was built ██ ██ a surplus of more than 500 inches of water flowed over its top, and that on or about May 25, 1911, plaintiff's predecessor placed a concrete headgate on the top of the dam so as to receive the 500 inches of water "agreed to be delivered to the predecessor in interest of plaintiff at said point," and connected the headgate with a pipe-line which carried the water to the Bandmann Ranch where it was used for irrigation. The words "agreed to be delivered to the predecessor in interest of plaintiff at said point" must be disregarded; they are mere surplusage in view of the meaning of the deed. Probably, however, that assertion in the complaint gives rise to the argument that the complaint is uncertain and ambiguous as to the source of plaintiff's title.

To repeat, it is alleged that plaintiff's predecessor placed a headgate upon the dam in order to divert the waters (which he had a right to do), and connected the same with a pipe-line whereby the water was conveyed to and was used upon plaintiff's land for a beneficial purpose. This, under the circumstances, constituted an appropriation of the water which became appurtenant to the Bandmann land. This conclusion is denied by counsel for defendant, who say that if plaintiff's predecessor "had relied upon the ordinary appropriation of water from a stream it would be necessary for him to join the other appropriators from the stream and determine their respective priorities." This does not follow. It does not appear that the Missoula, or Hell Gate, River was an adjudicated stream, and, even if it did, it does not follow from the facts pleaded that plaintiff's predecessor could not have made a valid appropriation therefrom. (See *Donich* v. *Johnson*, 77 Mont. 229, pp. 245, 246, 250 Pac. 963, pp. 967, 968.)

Assuming that conditions have remained the same as they were when plaintiff's appropriation was made, plaintiff has no cause for complaint when, in supplying defendant's needs, there is not sufficient water in the river to flow over the top

of the dam. When the agreement between Wethey and Bandmann was made, and when the deed was executed by the Clark-Missoula Power Company to Theresa Bandmann, it was contemplated by all that the needs of the defendant must be supplied before there would be any surplus water in the stream for the use of plaintiff's predecessor. Thereupon, that is, after defendant's need was satisfied, she was entitled to the surplus. As the court said in *Mattis* v. *Hosmer*, 37 Or. 523, 62 Pac. 17, 19, "the appropriation of water to a beneficial use is founded upon the rule of necessity, which, when satisfied, becomes the measure of the right, whereupon subsequent appropriators may use the surplus." Also, a subsequent appropriator may use the water of the stream, to the use of which a prior appropriator is entitled, when the prior appropriator does not need it. An appropriation does not confer such a right to the body of water appropriated as that the appropriator can allow it to run to waste or prevent others from using it when it is not necessary for the purposes of his own appropriation. (*Galiger* v. *McNulty*, *supra*; *Mann* v. *Parker*, *supra*.

It is argued that plaintiff's complaint is founded upon the theory that the grant in the deed carries with it the absolute right to the use of 500 inches of water, together with a guaranty upon the part of the grantor that such amount will be maintained. We do not so read the complaint and plaintiff's counsel does not advance that theory in his brief. The notion is erroneous whether advanced or not.

After setting forth facts showing the emplacement of the headgate on the top of defendant's dam, and the appropriation of water for use on plaintiff's lands, to which the water is alleged to be appurtenant, plaintiff charges that defendant claims some interest, right, or title to the use of the appropriated water and has notified plaintiff of its intention to deprive him of the use of the headgate, and from taking any water from the same; that defendant claims some right in or to the water so appropriated for use on plaintiff's land; and that defendant's claim is without right or title.

The complaint states a cause of action. (*Pollock M. & M. Co.* v. *Davenport*, 31 Mont. 452, 78 Pac. 768; *Slette* v. *Review Pub. Co.*, 71 Mont. 518, 230 Pac. 580; *Teisinger* v. *Hardy*, 91 Mont. 9, 5 Pac. (2d) 219.)

Nor is the complaint uncertain or ambiguous when the meaning of the deed is ascertained, as the law directs. If a complaint is certain enough to apprise the adversary definitely and unequivocally of that which he is required to answer, it is not uncertain or ambiguous within the meaning of the statute.

The judgment is reversed and the cause remanded to the district court of Missoula county, with direction to overrule the demurrer.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.