The HONORABLE THOMAS A. OLSON, District Judge,
sitting for MR. JUSTICE SHEEHY, concurring and dissenting:
I agree with the majority that the Department of Natural Resources and Conservation (DNRC) has statutory authority to impose conditions or limitations on a new water permit to ensure that senior appropriators are not left short of water. In this case, I would approve of DNRC’s condition that Monforton not irrigate if the senior users needed *100 water. The practical effect of such a limitation would vary from year to year, depending upon the availability of water for irrigation. As I shall point out herein, such a limitation makes good sense because of the unpredictability of our Montana weather. Despite the advances made by science, our technology cannot tell us what quantity of water is going to be available in future years. However, DNRC went much further in this case and attached another limitation on Monforton: no irrigation in August, September or October of any year.
My dissent, therefore, is to this last condition formulated by DNRC which, in effect, attempts to predict the future water availability, thus resolving any doubts against Monforton, and in favor of the senior appropriators. For over a hundred years Montana water law was based on simple practicality. If there is water available, then it should be put to a beneficial use in this arid state. For example, this Court long ago endorsed the idea that the first persons to put water to a beneficial use received a right that had priority over others who came later. Mettler v. Ames Realty Co., 61 Mont. 151, 201 P. 702 (1921). To balance what might, on its face, seem to be an invitation to waste or abuse water, this Court recognized a counterbalancing obligation that a senior water user could appropriate only that amount of water that he could beneficially use, and which was necessary for his purposes. Custer v. Missoula Public Service Co., 91 Mont. 136, 6 P.2d 131 (1931); Zosel v. Kohrs, 72 Mont. 564, 234 P. 1089 (1925); and Norman v. Corbley, 32 Mont. 165, 79 P. 1059 (1905). This Court held that a senior water user had an obligation to leave in the stream water he could not put to use so that the water was available for others. Tucker v. Missoula Light and Water Co., 77 Mont. 91, 250 P. 11,15 (1926); Creek v. Bozeman Waterworks Co., 15 Mont. 446, 38 P. 459, 461 (1894); and, Zosel v. Kohrs, supra, 234 P. at 1093. Indeed, those who followed after the senior appropriator could use the available water without obtaining his permission. Custer v. Missoula Public Service *101 Co., 6 P.2d at 134. See also, Zosel v. Kohrs, 234 P. at 1093; Norman v. Corbley, 79 P. at 1060; and Tucker v. Missoula Light and Water Co., 250 P. at 15.
This is not to say that all was well with Montana water law. The system had serious defects. Professor Albert Stone has noted these:
1. Legislative attempts to require water users to file a notice of appropriation were ineffectual.
2. County water records were virtually useless in determining the amounts of water actually being used.
See Stone, “Montana Water Rights — A New Opportunity,” 34 Montana Law Review at 68.
In 1973, the legislature adopted the Water Use Act, presumably to correct these and other defects. In its stated policies, the legislature again endorsed the time-tested basis for Montana water law: that water resources of the state be put to optimum beneficial use and not wasted. Section 85-1-101(1), MCA, 1983. As between appropriators, the first in time is the first in right. Section 85-2-401,., 1983. An irrigator who diverts more water than he can “actually and necessarily” use must return it to the stream for others. Section 85-2-412, ., 1983. The district court, not DNRC, was given jurisdiction to supervise the distribution of water among appropriators. Section 85-2-406, MCA., 1983. Aggrieved senior water users retained their traditional access to the district court. Section 85-2-406, MCA., 1983.
To solve the notice and recordation problems, all new applicants were to petition DNRC for permission to divert and use water through a permit system. Section 85-2-302, MCA, 1983. The department was obligated to issue a new water permit if the applicant “by substantial credible evidence” showed there was water available and the rights of others would not be adversely affected. Section 85-2-311, MCA, 1983. Based on the context in which this new act came into being, I can only conclude that the legislature was determined to preserve the best of our hundred-year experience with the use of water in this state, supplemented *102 by a workable regulatory scheme.
By conditioning Monforton’s use of water to times when the senior appropriators, including Montana Power’s Cochrane Dam, needed water, DNRC clearly found that there was substantial credible evidence that water was available and the rights of others would not be adversely affected as required by Section 85-2-311, MCA, 1983. Having so found, the department added the objectional condition, that there could be no irrigating by Monforton from and after August 1 of every year. The only explanation that I can attach to the department’s actions, having found, water available earlier in any year, is that this would allow Monforton’s permit to clutter the records by showing the right to use water in the fall, when the likelihood was there would not be enough water available for him. Thus it could be argued our water records would be headed back down the road from whence we had come, records showing water usage but with no assurance that the water user was actually in a position to use the water described.
I find this kind of analysis implicit in the majority opinion. I also find it unpersuasive. The department, supported by the majority opinion, is splitting hairs here. It finds a new irrigator can irrigate for the first half of the season, with the senior appropriators protected by the conditions of the permit, but since there may not be water in the second half, a flat prohibition is issued. I am unable to find clear legislative authority for such arbitrary conditions, when we have the assurance that in all events the senior water users will be protected.
Traditionally, “substantial evidence” has been held to be different, and less stringent than “a preponderance of evidence”. Strachan Shipping Co. v. Shea, 276 F.Supp. 610 (S.D. Texas 1967). I would find that Monforton’s proof which the department found, substantial and credible for the first half of the irrigation season sufficient to authorize a water permit for the entire season, subject to protecting the senior users.
*103 Looking at the record in this particular case, I find there is evidence to support a finding that Monforton could irrigate in August, September and October. Lest the uninformed reader think irrigators only use water in the spring, one need only travel the back roads of Montana to see prudent farmers building up soil moisture in the fall.
Starting with the obvious, Monforton stands to lay out significant sums of money for an irrigation system, which speaks convincingly that he believes there is excess water, either from extra moisture or from non-use of the other appropriators. The senior appropriators could not agree among themselves on when extra water was available in the Boulder River after August 1. Sonny Huckaba testified that the river was usually dry in August but that there were wet years with more than enough water to meet his needs. Shaw testified that there was never water after the 1st of August. Montana Power’s evidence was also disputed. MPC is contesting new appropriations in the upper Missouri River, to protect its generating facility at Cochrane Dam, near Great Falls, which has only limited storage capabilities. But DNRC seems not to have given much credence to MPC’s concern because the record shows it issued recent water permits with dates late into the fall. (September 15 for Brown, 12016-s41G, October 15 for Lane, 11493-s4lG, and October 15 for Robbie, 20301-s41F) Even DNRC’s reports were not entirely consistent with when and where there was water in the Boulder for extra irrigation. So an objective view of the record leaves the reader with an impression that the extra water is an “off and on” proposition. Given the vagaries of our Montana weather, this should come as no surprise. But one would think that all this uncertainty would be taken into consideration when DNRC attached the usual protection for senior appropriators, including the admonition to Monforton to irrigate only when Montana Power was “spilling water” over the top of Cochrane Dam. However, as I have indicated, DNRC went further and prohibited any fall irrigation.
*104 Reduced to its bare essence, as I see it, the majority is holding that even though the senior appropriators are protected by the first condition, the integrity of the filing system is to be protected at the cost of limiting a new irrigator, even though there are times that water might be available in the prohibited time period. This, to me is exalting form and procedure over substance. Up to this point in time, we have been telling the Monfortons of this state, “put all the water you can to a beneficial use.” Now we say, “DNRC’s records come first, and if there is a doubt there will be no water usage, even if water is available in the future.” I do not believe it is in the best interests of this state, nor did the legislature envision, giving authority to a state agency to act in such an arbitrary or capricious manner.
I would approve the issuance of a permit to use water to Monforton, conditioned only that he not use water when the senior appropriators had need for the water under their prior rights. I would affirm Judge Lessley’s decision for the reasons stated.