Argued June 29, modified November 10, 1914, rehearing allowed
   January 5, reargued January 26 former opinion sustained February
   23, 1915.

## IN RE NORTH POWDER RIVER.*

### (144 Pac. 485; 146 Pac. 475.)

**Waters and Watercourses—Appropriations—Actions to Determine
   Rights—Review—Exceptions.**

1.    Sections 6642–6644, L. O. L., provide that, upon the completion
of the taking of proofs of claims before the division superintendent,
a claimant may give notice to the superintendent of his desire to con-
test the claim of another and for the hearing of such contest. Sec-
tion 6648 requires the board of control to determine and establish the
several rights to the water of the stream and to transmit the evidence
and such determination to the Circuit Court, the determination relat-
ing not only to the contested claims but to every claim, and requires
the Circuit Court to fix a time for a hearing on such determination,
and to give notice thereof. Section 6650, L. O. L., provides that
within 30 days from the filing of the evidence and order in the Cir-
cuit Court any party may except to the determination. *Held,* that
the right to file exceptions to an adjudication in favor of a claimant,
given by Section 6650, is not waived by failure to contest the claim
under Sections 6642–6644.

   ⌊As to rights of appropriators and riparian owners respectively,
   see note in 43 Am. Dec. 269.⌋

**Waters and Watercourses — Appropriation — Action to Determine
   Rights—Evidence.**

2.    In proceedings to adjudicate water rights in a stream, evidence
*held* insufficient to establish an agreement by a company using water
for power purposes to release its water right during July and August
of each year for the benefit of the farmers desiring to use it for
irrigation.

**Waters and Watercourses—Appropriation—Action to Determine Rights
   —Evidence.**

3.    The fact that a company which had appropriated water for
power purposes did not use the water during certain months in the
year because it had no use for it then is not sufficient evidence, in
proceedings to adjudicate the water rights in a stream, that the com-
pany had agreed with the farmers not to use the water during those
months.

   [As to the validity of rules and regulations of irrigation com-
   panies, see note in Ann. Cas. 1912D, 137.]

**Waters and Watercourses—Appropriation—Extent of Right.**

4.    The appropriation of water to a beneficial use is founded upon
the rule of necessity, and the necessity is the measure of the right, so

---

   *Upon the right of a prior appropriator of water, see note in 30
L. R. A. 665.

   As to the right to change use or channel of water appropriated, see
note in 30 L. R. A. 384.                                    REPORTER.

that subsequent appropriators may use the surplus of the prior appropriation which is not necessary for the use of the prior appropriator.

**Waters and Watercourses—Appropriation—Change in Purpose of Use.**

5.   A mill company having an appropriation for power purposes cannot change the point of diverting its water to a point higher up the stream, where such change would injure other users taking water from the stream at a point between the original and new points of diversion.

**Waters and Watercourses—Appropriation—Change in Point of Diversion and Place of Use.**

6.   A change in the point of diversion and place of use of an appropriated water right may be made when it can be done without prejudice to the rights of others, but such change does not carry with it the priority of appropriation as against subsequent appropriators.

**Waters and Watercourses—Appropriation—Change in Purpose of Use.**

7.   Where a mill company having a right to divert water for power purposes did not need the water during certain summer months, and had never used it at that time, it had no right to the water during those months and could not convey a right to its use to others to be used for irrigation purposes, since the appropriator's right is measured by his own use.

**Waters and Watercourses — Appropriation — Actions to Determine Rights—Relief Awarded—Quantity of Water.**

8.   Where the general irrigation of grain crops terminates on July 1st and thereafter the water is needed only for stock and for hay crops, which require a smaller quantity than grain, an order of the water board, in proceedings for the adjudication of water rights, that after July 1st the water user shall be limited to one-half inch per acre and that small appropriators shall use the water in rotation when practicable, is reasonable.

**Waters and Watercourses—Prescriptive Rights.**

9.   Where a company appropriating water for power purposes did not use the water for about two months each year, and during those months the water was applied to the beneficial use by upper appropriators, and this practice continued for more than 10 years, the upper appropriators acquired by prescription the right to the water during those two months of each year.

[As to prescriptive title to water, see note in 93 Am. St. Rep. 722.]

From Union: John W. Knowles, Judge.

Department 2.   Statement by Mr. Justice Eakin.

This is an appeal from a decree of the Circuit Court for Union County, Oregon, affirming the determination of the State Board of Control, now the State Water Board, as to the relative rights of the water

users on North Powder River.   The principal issue on
the appeal is as to the North Powder Milling & Mer-
cantile Company's authority and power to sell of its
appropriation of 25 second-feet 400 miner's inches,
for use during July and August of each year, being
diverted at a point in the southeast quarter of the
northeast quarter of section 28, township 6 south,
range 39 east, and made in 1871; and as to the right
of the purchasers thereof to change the use and point
of diversion thereof.   On June 15, 1909, the North
Powder Milling & Mercantile Company by quitclaim
deed conveyed to James Dalton, P. L. Smith, and J. D.
McPhee 400 miner's inches of its appropriation dur-
ing July and August of each year, providing therein
that it would not and should not be bound to deliver
or be held responsible for the delivery of said water,
or any part thereof.   This deed is made Exhibit 2 of
Dalton's statement and proof of claim, sworn to on
October 13, 1910, and filed with the state engineer
October 24, 1910, being found on leaf 8, claim 17, of
volume I of the record in this case.   After the taking
of evidence the division superintendent gave notice
fixing the time and place that the evidence would be
open to the inspection of the claimants under Section
6642 L. O. L., and some contests were filed with the
superintendent as provided for in Section 6643,
L. O. L., but no contest was filed by anyone against the
statement and proof of claim of the North Powder
Milling & Mercantile Company or of said Dalton, Smith
and McPhee.   Thereupon the record was transmitted
to the board, and an order made by it determining and
establishing the rights of the several claimants.
Thereafter within the time allowed by law C. E. Davis
and 54 others and J. H. Hutchinson and others filed
exceptions to the determination of the board as to the

rights of the North Powder Milling & Mercantile Company to sell 400 miner's inches of its appropriation during the months of July and August of each year and of Dalton and others to buy, intending to change the use thereof and the point of diversion from the stream. The Circuit Court affirmed the determination of the board, and Davis and others and Hutchinson and others. appeal.          MODIFIED.

For appellants C. E. Davis et al., there was a brief submitted by *Messrs. Crawford & Eakin,* with an oral argument by *Mr. Thomas H. Crawford.*

For appellants James H. Huntington et al., there was a brief over the name of *Mr. C. H. Finn.*

For respondents North Powder Milling & Mercantile Company, James Dalton, P. L. Smith and J. D. McPhee, there was a brief and an oral argument by *Mr. Charles E. Cochran.*

For respondents S. L. Baer et al., there was a brief and an oral argument by *Mr. Claude McColloch.*

There was a brief submitted for the State Water Board by *Mr. James T. Chinnock.*

MR. JUSTICE EAKIN delivered the opinion of the court.

1. The first question presented is as to the exception to the ruling of the board that the failure of the appellants to file a contest before the board to the claim of the North Powder Milling & Mercantile Company and to the claim of Dalton, Smith and McPhee precluded appellants from taking exceptions after-

ward.  By Sections 6642 and 6643, L. O. L., upon the completion of the taking of proofs of claims a claimant may give notice to the superintendent of his desire to contest the claim of another.  Provision is made in Section 6644, L. O. L., for hearing such contest, and additional evidence may be taken in relation thereto, not for decision by the superintendent, but to be transmitted to the board.  By Section 6648 the board is to make its determination on all claims and transmit the evidence and such determination to the Circuit Court. That determination does not relate alone to contests, but to every claim, and the court sets a time to hear the determination by the board upon the whole matter. Upon the filing of the evidence and determination in the Circuit Court any party may file exceptions to any part of the determination, and all parties shall be heard.  These exceptions may be to the determination of the board, or to any part thereof, and may have no particular reference to the contests referred to in Section 6643, L. O. L.  The water code contemplates that the whole matter is to be reviewed and affirmed by the Circuit Court, although it becomes final on the action of the board unless the bond provided for in Section 6653 has been filed, which would hold it in abeyance until the Circuit Court rendered final decree.  Therefore appellants had not waived their right to except to the board's determination as to the milling company's rights, to sell a portion thereof, or to the claim by Dalton and others to 400 miner's inches thereof during July and August.

The first provision for a contest of water rights is under Sections 6642 and 6643, L. O. L., and the contest may be filed upon the completion of the proofs of claims, and a hearing and further taking of testimony had before the superintendent; but Section 6650 makes

the first provision for exceptions to the determination of the board, which may be taken at any time prior to the hearing provided for in Section 6648, namely, after the transcript of evidence and the determination of the board have been filed in the Circuit Court "at which time any party may file exceptions to the determination, or any part thereof." Upon the hearing of such exceptions the court may remand the matter for the taking of further evidence, which was done in this case. In other words, the provision for exceptions provided for in Section 6650, L. O. L., does not refer to the contests mentioned in Section 6643. This is made plain by Section 6650, as amended Laws of 1913, page 162.

2, 3. It is urged by appellants that the North Powder Milling & Mercantile Company relinquished their claim to the water during July and August of each year by an agreement with the farmers made in the year 1896; that such an arrangement with the farmers was made by Kelsey, the manager of the milling company, in the fall of 1896; and, also, that there was proof tending to establish that the company acquiesced in the arrangement by releasing the water during those months from that year until the present time. There was some evidence that the officers of the milling company were consulted by Kelsey at that time, and adopted a resolution to that effect, of which witness Kelsey contends a record was made; but the other officers of the company, Travilion and Gorham, testify they have no recollection of any such agreement or acquiescence, that, if a record was made of it, it cannot be produced, as a fire occurred in the mill soon after that time which destroyed its books. The evidence of such an agreement with the farmers, or with any of them, is testified to only by Jess Dodson,

who overheard some talk between Kelsey and Powers to that effect; but his testimony is very vague and too unsatisfactory to establish a definite agreement. Kelsey testifies to the agreement, and that he notified many of the farmers that the milling company did agree to that arrangement. Only three of the farmers testify to having received such information from Kelsey, and they do not assert that they had any definite agreement with him, namely, J. S. Davis, A. B. Davis and Jess Dodson. They state they had no conversation with Gorham or Travilion, who were the president and secretary of the milling company, concerning the matter, and they do not testify to any fixed proposition or agreement, but simply that Kelsey agreed to take the matter up with the company, and some time afterward told them that the milling company would let the farmers have the water in July and August. Travilion became manager of the mill in 1898, and the matter was not again mentioned; but it appears that after about the 10th of July until the 1st of September the milling company did not use the water and had not for many years prior thereto, nor has it since, evidently because it did not require it. However, this is not such proof of an agreement between the milling company and the farmers as can be established or enforced as such, and the determination of the board to that effect should be sustained. Although the milling company has permitted the water to remain in the river during most of those two months, it does not appear that the alleged agreement was acted upon nor that the water was released in fulfillment thereof, and the appellants are not entitled to have such agreement declared or enforced.

4. In considering the right of the North Powder Milling & Mercantile Company to sell a part of its ap-

propriation during the months of July and August, and to change its use and point of diversion, we find the rule in Oregon relating to a right to appropriate water for use from unnavigable streams stated in *Mattis* v. *Hosmer,* 37 Or. 523 (62 Pac. 17, 632), by Mr. Justice Moore.

"The appropriation of water to a beneficial use is founded upon the rule of necessity, which, when satisfied, becomes the measure of the right, whereupon subsequent appropriators may use the surplus of that to which the prior appropriator is entitled, when not necessary to his use."

Except as to water appropriated for mining purposes or for sale, that states the rule in California also: *Ortman* v. *Dixon,* 13 Cal. 34.

5. Wiel on Water Rights, Section 508, and Kinney on Irrigation, Section 857, assert that, if an appropriator has acquired a vested right to the water appropriated, he may change the point of diversion from one point to another. By the holding in Oregon, as above stated, the water is held to be appurtenant to the land to which it is diverted, and the point of diversion cannot be changed if thereby the rights of others are prejudiced; and the water being appurtenant to the land to which it was appropriated, if transferred to another separately from the land, cannot carry its priority to the new owner, but would become a new appropriation as of that date. An owner of a water right by prior appropriation cannot change his point of diversion if such a change will injuriously affect other users on the stream, nor can he sell it separately from the land either to change the point of diversion, to make a new or different use of it to the injury of other users, or to secure the same priority. It is held in *Cole* v. *Logan,* 24 Or. 304 (33 Pac. 568),

that the defendant having made a diversion in 1871 could not thereafter change his point of intake if it injuriously affected the rights of any subsequent appropriator. The change by the milling company of its point of diversion, whereby it would tap the creek above the dam of the Kelsey Ditch, would injuriously affect the rights of users under that ditch. It is said in *Williams* v. *Altnow,* 51 Or. 275 (95 Pac. 200, 97 Pac. 539):

"There may therefore be numerous appropriations of water of the same stream, and for use at different times and seasons, or for different purposes. * * After the rights of subsequent appropriators have attached, the prior appropriator cannot change or extend his use to their injury."

And in *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728), we find at page 426 of said Oregon report:

"None of the quantity acquired under this [1882] appropriation can be used elsewhere without prejudicing others' rights, for which reason he is limited to its use, where needed, to the lands mentioned."

See to the same effect, *Bolter* v. *Garrett,* 44 Or. 304 (75 Pac. 142). Kinney on Irrigation, Section 870, discussing this question, says that water appropriated for milling purposes only cannot as against an appropriator below be used for irrigation; and the same rule would apply to a change in point of diversion of water used for power purposes to a point higher up the stream to be used for irrigation. There are two uses to which the water may be put: One in which none of the water is consumed, as for power purposes only, and one in which all or nearly all of it is consumed, as in case of irrigation; and, if the changed use be from one in which the water is not consumed to one in which

it is, such diversion is more apt to injuriously affect others.

6. A change in the point of diversion and place of use may be made when it can be done without prejudice to the rights of others: See *Whited* v. *Cavin,* 55 Or. 98 (105 Pac. 396). A change, however, as to subsequent appropriators, will not carry with it the priority of appropriation. This is held in many Oregon cases: *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728); *Bolter* v. *Garrett,* 44 Or. 304 (75 Pac. 142); *Williams* v. *Altnow,* 51 Or. 275, 95 Pac. 200, 97 Pac. 539.

7. Appellants contend that the North Powder Milling & Mercantile Company's appropriation of 25 second-feet for power purposes, with priority of 1870, does not include use for July and August. The milling company contends that its right included those two months, and that it had sold the right to 400 inches thereof for those two months to Dalton, Smith and McPhee, who desired to change the place of diversion to a point higher up the stream and to change the use from power to irrigation, claiming priority from 1870. These questions were before the board and specifically reserved to the court; and in order No. 7 the board states as follows:

"Respectfully reserving to the court the consideration and determination of the questions of law arising in the matter of the rights claimed by the North Powder Milling & Mercantile Company, and by P. L. Smith, J. D. McPhee, and James Dalton, to the use of the water appropriated in the year 1870 by the predecessors of the said North Powder M. & M. Co., during the months of July and August of each year."

The board in order No. 14 holds:

"The rights of appropriation hereby confirmed are appurtenant to the lands herein described, and * * are limited and confined to the irrigation of the lands herein described."

This is apparently in accordance with Section 6668, L. O. L., and is the evident intent and purpose of the legislation on that subject. Although some of the text-writers and the decisions of some of the courts seem to recognize that the appropriator may sell the water separately from the land, this is only upon the theory that the appropriator owns the water, and not merely the right to the use of it for a particular purpose; but, in states in which legislation relating to the use of water has been enacted, it is not the water but the use of it for a particular purpose that is the limit of the right, and, when not needed for that purpose, the next person in priority of time is entitled to it, and a prior appropriator cannot sell it to a stranger to the injury of a subsequent appropriator. This is the case in Colorado, Wyoming and Montana, and our own state in 1909 adopted the same rule by enacting Section 6668, L. O. L. Wiel on Water Rights, Section 512, in referring to the tendency to hold the water as appurtenant to the land, says:

"The rule permitting changes is an instance of the possessory origin of the law of appropriation upon the public domain, and is disappearing, though more slowly than the other possessory characteristics of the early law. The disappearance is resulting from the passage of lands into private hands, for the law prohibits injury to them; from the withdrawal of public lands, destroying the freedom of change there; and for the internal transition in the law of appropriation from a possessory system to a system of law making the right inhere in the specific initial mode of use."

Independently of the statute of 1909, in decisions permitting an appropriator to change the point of diversion or use, the Supreme Court of this state has apparently recognized the doctrine that, if the change injuriously affects others, it cannot be made. The same or a similar rule is adopted in *Williams* v. *Altnow*, 51 Or. 275, (95 Pac. 200, 97 Pac. 539), and is found elsewhere in the Oregon cases; but from the first cases where water rights were litigated in Oregon the rule established is that the appropriator has a right to apply only so much water as is necessary for his use and actually beneficial. In *Simmons* v. *Winters*, 21 Or. 35 (27 Pac. 7, 28 Am. St. Rep. 727), Mr. Justice Lord says:

"The needs or the purpose for which the appropriation is made is the limit to the amount of water which may be taken. He can only appropriate so much as he needs for the given purpose":

*McCall* v. *Porter*, 42 Or. 49 (70 Pac. 820, 71 Pac. 976), *Bolter* v. *Garrett*, 44 Or. 304, (75 Pac. 142.)

Thus, if the milling company does not need all its appropriation during July and August, it cannot sell the surplus, which should go to the appropriator next in priority. It has a right only to the amount that was necessary for its use. This principle has been recognized in the Oregon decisions for a great many years, especially when made an issue. In *Williams* v. *Altnow*, 51 Or. 275 (95 Pac. 200, 97 Pac. 539), it is said:

"By such appropriation he acquired a prior right to water sufficient for that purpose. He did not, however, acquire title to the water, but only the right to use it for the purposes for which it was appropriated. When not needed for that purpose, it was subject to appropriation by others."

This is the express holding of Mr. Justice KING in *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728), where he says:

"The result is that the law has become well settled that beneficial use and needs of the appropriator * * is the measure and limit of the right of such appropriators"—where many cases are cited.

See, also, *Ison* v. *Sturgill,* 57 Or. 109 (109 Pac. 579, 110 Pac. 535). The principle is again restated in *Sherred* v. *City of Baker,* 63 Or. 28 (125 Pac. 826), where Mr. Justice BURNETT says:

"According to the modern accepted doctrine, it is the use of the water, and not the water itself, in which one acquires property in general."

See, also, *Caviness* v. *La Grande Irr. Co.,* 60 Or. 410 (119 Pac. 731).

Therefore, the milling company not having used or needed the water in July after the 10th and during August of each year, we find that it is not entitled thereto during that period of time: The water is subject to use by the appropriator next in priority. The milling company owned no interest therein that it could sell or transfer to others, and therefore the purchasers of a portion of the milling company's appropriation may not change the point of diversion, the purpose of its use, or claim of priority therefor from 1870, as disclosed by the facts in this case, and the attempt to change the point of diversion and the character of the use by Dalton, Smith and McPhee was in violation of the rights of others. *Whited* v. *Cavin,* 55 Or. 98 (105 Pac. 396), *Williams* v. *Altnow,* 51 Or. 275 (95 Pac. 200, 97 Pac. 539), and other Oregon cases which recognize the right to change the point of diversion, relate to such change of point of diversion or in

the use as is for the convenience of the original appro-
priator within the purview of his initial appropria-
tion, and have no reference to the change of use made
for a purpose wholly foreign to such appropriation.

8. There are two other matters determined by the
board which are questioned on this appeal: The order
of the board that after July 1st each year the respect-
ive water users shall be limited to a half inch for each
acre actually irrigated; and that after July 1st of each
year those small appropriators of water, namely, not
exceeding an appropriation of one second-foot, shall,
where practicable, with consideration given to the or-
der of their relative priorities, be required to rotate
in the use of the water under the direction of the
water-master. These provisions are only to limit the
useful application of the water and to get the greatest
possible benefit from it. The general irrigation of
crops terminates about July 1st, and water is used
thereafter only on hay and alfalfa and for stock, neces-
sitating a much smaller quantity of water than for
the regular irrigation of grain crops; and the State
Water Board has exercised its judgment on the neces-
sity for these provisions. The appropriator's rights
are only for his needs, and we think these provisions
are reasonable and will work injury to no one.

Appellants also question the order of the board
limiting the amount of water to an inch per acre until
July 1st and the finding of the board that the proper
irrigation of the land is fully satisfied with 1½ to
2½ acre-feet of water, which appellants contend can-
not be obtained during 30 days' irrigation at the rate
of 1 inch per acre. We think there should be a limit
upon the continuous flow to 1 inch per acre, and the
total amount limited to 2½ acre-feet for the whole
amount of the diversion. The board attempts only to

place a limit.    Counsel have argued that they should not be limited to an inch per acre while there is plenty for everybody; but Mr. Chinnock, who is a member of the board, in a brief prepared by him, at page 36, says:

"It is not the intention or purpose of the law to prohibit anyone from diverting water from the stream when it is not required by others"—that is, from April 15th.

There is ample time from that date for the whole diversion of an inch per acre continuous flow to amount to more than 1½ acre-feet, and we think that a limit to an inch per acre is not unreasonable.    In that regard we affirm the ruling of the board.

The decree of the Circuit Court should be modified accordingly, decreeing that the North Powder Milling & Mercantile Company has no right to the water during the time from July 10th to September 1st, and that it did not own such an interest in it that it could sell for that period of time, and Dalton, Smith and McPhee acquired no title or interest in it of date prior to the date of the purchase.

                    Modified.    Sustained on Rehearing.

Mr. Chief Justice McBride, Mr. Justice Bean and Mr. Justice McNary concur.

75 Or.—7

Argued on rehearing January 26, former opinion adhered to February
23, 1915.

ON REHEARING.

(146 Pac. 475.)

A rehearing was granted in this cause on January
5, 1915.          SUSTAINED ON REHEARING.

For appellants there was a brief by *Messrs. Craw-
ford & Eakin* and *Mr. C. H. Finn,* with an oral argu-
ment by *Mr. Thomas H. Crawford.*

For respondents North Powder Milling & Mercan-
tile Company and James Dalton et al. there was a
brief and an oral argument by *Mr. Charles E. Coch-
ran.*

In Banc.    Opinion by MR. CHIEF JUSTICE MOORE.

9. At a rehearing of this cause, it was insisted that
an erroneous conclusion was reached in the former
opinion, wherein it was determined that the North
Powder Mercantile & Milling Company, a corpora-
tion could not change the point of its diversion of the
waters of North Powder River to a point higher up
the stream, when such change would injure water-
users between the original intake and the new point
of diversion, since no testimony was received tending
to show that any person would sustain injury by the
change.    The predecessor in interest and title of the
corporation named secured on August 13, 1898, a de-
cree awarding an appropriation from that river of
1,000 inches of water, miner's measurement, with
which to operate a mill: *North Powder Milling Co.* v.
*Coughanour,* 34 Or. 9 (54 Pac. 223).    It appears from

the testimony that in the North Powder Valley the arable land which can be irrigated produces excellent crops of wheat, a market for which is chiefly found at the flouring-mill of the corporation at the railroad station of North Powder. The grain is usually harvested in August, and the farmers begin hauling the crop to the mill about the last of that month in each year. If the mill is started on the 1st of September and thereafter continuously operated, the entire crop is usually ground about July 1st of the following year. The water is then shut off and the mill thoroughly cleaned and put in order so as to be prepared to grind the new crop when enough wheat has been received. For more than 10 years prior to June 15, 1909, when James Dalton, P. L. Smith and J. D. McPhee secured a deed purporting to transfer to them a right to the use of 400 inches of water, it had been the constant practice of the North Powder Mercantile & Milling Company and its predecessor in interest to shut down the mill about July 1st of each year. The 1,000 inches of water which it had been using for 10 months was thereupon applied to a beneficial use by appropriators higher up the stream until September 1st, when they returned the water to the river in order that the mill might be operated. The corporation and its predecessor not having used any part of such appropriation during the months of July and August for more than 10 years prior to June 15, 1909, the rights of other appropriators attached by prescription to the entire 1,000 inches of water which were not needed for milling purposes during July and August. The North Powder Mercantile & Milling Company had no interest in the 400 inches of water the use of which it undertook to grant to Dalton, Smith and McPhee. The testimony of witnesses opposed to such attempted

grant shows that the water, when not used by the corporation, had been appropriated under a claim of right and continuously used adversely from the time the mill shut down each year until it started again. This branch of the case was tried upon that theory.

It is believed that the conclusion announced in the former opinion is correct, and we therefore adhere to it.          Sustained on Rehearing.

———

Motion to strike brief from files overruled December 8, argued December 14, reversed December 31, 1914, rehearing denied February 23, 1915.