Argued at Pendleton October 26, 1942; reversed January 19;
rehearing denied April 6, 1943

## DRY GULCH DITCH CO. ET AL. v. HUTTON ET AL.

(133 P. (2d) 601)

Before KELLY, Chief Justice, and ROSSMAN, LUSK, BRAND and RAND, Associate Justices.

*George T. Cochran,* of La Grande (Cochran & Eberhard, of La Grande, and W. H. Strayer, of Baker, on the brief), for appellants.

*Allan A. Smith,* of Portland, and *Blaine Hallock,* of Baker (Hallock, Donald & Banta, of Baker, and Laing, Gray & Smith, of Portland, on the brief), for respondents.

KELLY, J.  Plaintiffs are corporations, namely, the Dry Gulch Ditch Company and the Waterbury-Allen Ditch Company, and their stockholders. Defendants, Orin Hutton, Fred A. Phillips, Charles F. Duby, Wayne Phillips and Joseph Jackson constitute the partnership, which is the owner of Hogum Ditch. The State Engineer and the Water Master are also defendants, but are not active contestants herein, although both of them filed answers in the trial court. For convenience, the members of the partnership, owners of the Hogum Ditch, will be termed the defendants.

Involved in this record are three natural water courses, namely, Eagle Creek, West Eagle Creek and Goose Creek. There are four lakes, namely, Traverse, Echo, Eagle and Looking Glass lakes, and five artificial ditches, likewise involved. The ditches are called Hogum Ditch, the feeder ditch, the Sparta Ditch, the Dry Gulch Ditch and the Waterbury Ditch. Glendenning Ditch or creek, a part of which is used as a part of the Hogum Ditch, is mentioned and reference is also made to Balm Creek.

There are three separate and distinct areas which have been served with the water from these natural streams or water courses just mentioned. These respective areas for convenience will be referred to as plaintiffs' lands, defendants' lands and the Sparta lands respectively.

Eagle Creek, sometimes referred to as Main Eagle Creek, rises near the northeast corner of township 6, south range 43 east and flows in a southwesterly direction until its confluence with West Eagle Creek near the northwest corner of section 28 in said township 6, south range 43 east. From that point Main Eagle or Eagle Creek flows in a southeasterly direction emptying into Powder River near the northwest quarter of the northeast quarter of section 35, township 9 south range 45 east.

West Eagle Creek is a tributary of Eagle Creek and rises near the northern boundary line of section 5, township 6 south range 43 east and flows in a southerly direction to its confluence with Eagle Creek as above stated.

Goose Creek has its source in the northern part of township 7, south range 43 east. Goose Creek flows in a southerly direction and empties into Powder River near the southern boundary line of section 32, town-

ship 8 south range 43 east. By means of a dividing box, defendants distribute the water from Goose Creek to their lands which are located in the southwesterly part of township 8 south range 43 east.

Hogum Ditch taps West Eagle Creek near the southwest corner of section 9, township 6, south range 43 east and runs southerly about eleven miles emptying its waters into Goose Creek.

The feeder ditch is owned by the defendants and taps Eagle Creek, or Main Eagle Creek, near the southwest corner of the southwest quarter of the northwest quarter of section 15, township 6, south range 43 east, and furnishes water by means of a spillway to West Eagle Creek above the head gate of the Sparta Ditch which head gate is about two miles southerly from the head gate of the Hogum Ditch.

The Sparta Ditch has its head gate as just indicated, and when in operation, ran southerly to Sparta and the Sparta lands located near the center of township 8, south range 44 east.

The Dry Gulch Ditch taps Eagle Creek near the southeast quarter of the northwest quarter of section 17 in township 8 south range 45 east, runs southwesterly, connects with the Waterbury Ditch and in that way supplies plaintiffs' lands with water. Plaintiffs' lands are nearly all located in township 9, south range 45 east, a comparatively small portion being located in the eastern part of township 9 south range 43 east.

Traverse and Echo lakes are located at the head waters of West Eagle Creek and Eagle and Looking Glass lakes are located at the head waters of Eagle Creek. These four lakes just named were converted by the owners of the Hogum Ditch into reservoirs for the storage of water. The water from Traverse and

Echo lakes, when released, flow into West Eagle Creek; and those of Eagle and Looking Glass lakes, when released, flow into Eagle Creek.

Herewith is a rough draft of the premises with the four lakes omitted and the Glendenning Creek not designated. As stated, these lakes are northerly of the premises shown on the plat and are at the head waters of West Eagle and Eagle creeks.

Eagle Creek is a natural stream which drains the east and southeast slopes of a high range of mountains and known as the Eagle Creek or Wallowa Mountains. As stated, at its head it has two main forks, known as the west fork of West Eagle Creek and the main fork or Eagle Creek. From its head, it flows through a long, narrow canyon for some 25 or 30 miles before reaching Eagle Valley at the lower end of which it empties into Powder River. Its waters were first appropriated for placer mining purposes, but are now almost exclusively used for irrigation purposes. There are some 10,000 acres or more of irrigated lands lying in Eagle Valley and the immediate vicinity thereof. Some of the owners of these lands have earlier rights to the use of the water of Eagle Creek than those of the plaintiffs, whose lands are situate in the vicinity of Eagle Valley. Eagle Creek furnishes a large flow of water through the year but during the dry seasons of a few years, for short intervals of time, there has been insufficient water to fill the needs of all the users thereof.

As stated, Traverse and Echo lakes, above referred to, are located near the extreme head of West Eagle Creek and Eagle Lake and Looking Glass Lake near the head of Main Eagle Creek. These two streams come together some three or four miles below the point where defendants now divert water from West Eagle Lake

through what is known as the Hogum Ditch, which, as stated, is some 20 miles or more from defendants' lands.

A suit having been instituted by the Sparta Irrigation Company against defendants' predecessors in interest to restrain their interference with said Hogum Ditch, a decree, based on stipulation of the parties, was entered in said suit on November 5, 1915, which, among other things, decreed:

"That the plaintiff is also the owner and entitled to the uninterrupted use of and possession of that certain ditch or canal known as the Hogum Ditch conducting water and extending from a point on the West Fork of Eagle Creek near the Southeast Corner of Section 8, Township 6 South, Range 43 E. W. M., and running thence in a general southerly and southeasterly direction to a point where the waters conducted in said ditch are diverted therefrom over the mountain side into Glendenning Creek, a small natural stream immediately below said point, and thence into said Sparta Ditch, and that plaintiff has the right to the use and possession of said ditch to said point for the purpose of slumming said Sparta Ditch and to flow into said Sparta Ditch by means of said Hogum Ditch, the additional volume of water incident to said process, and for the aforementioned uses and purposes; and that the portion of said Hogum Ditch originally constructed below the aforementioned point of diversion into said Glendenning Creek and to a point below where defendants claim has for more than 20 years been abandoned and not operated, except as reconstructed by defendants herein, and that plaintiff has no title to said lower portion.

That defendants are the owners and entitled to the uninterrupted use and possession of that certain ditch, designated and named by defendants as Goose Creek Ditch, extending along the line of the ditch originally constructed and named Hogum Ditch from a point on the Northeast quarter of Section

29, Township 6, South R. 43, E. W. M., west of the spillway into which the waters conducted in said Hogum Ditch are diverted over said mountain side into said Glendenning Creek, and from said point to a point on said ditch line from which the quarter section corner on the north line of Section, Township 7 S. R., 43 E. W. M., bears north fifty-six degrees, thirty minutes, West, 1401 feet distance and that defendants have the right to build, construct and use said ditch for the purpose of conducting water therein to connect with Goose Creek at or about said last described point, for irrigation, and domestic purposes.

It is further considered, ordered, adjudged and decreed, that defendants, and each of them, their servants, agents, employees and any and all persons claiming by, through or under them or either of them, be and hereby are, and each is, enjoined, inhibited, and restrained from claiming or asserting any right, title or interest in, or to the portion of the hereinbefore described ditch and ditch line herein decreed to be the property of plaintiff, and from interfering with plaintiff in its use, possession or operation of said ditch as herein decreed to be the rights of plaintiff; and the plaintiff, its officers, agents, or servants and all persons claiming by, through or under it, be and hereby are and each is, restrained, inhibited and enjoined from claiming, or asserting any right, title, or interest in or to the portion of the hereinabove described ditch or ditch line decreed to be the property of defendants, and from interfering with defendants in their use, possession or operation of said ditch as herein decreed to be the rights of defendants.''

Following the decree of November 5, 1915, as signed by the trial judge, is the following statement:

''And the rights of said parties are hereby established in accordance with said decree.

That the Sparta Irrigation Company is the successor in interest of Geo. Grant, Trustee, and owns

the Sparta Ditch in Baker County, Oregon, and that part of the Hoagum Ditch extending from a point on the West Fork of Eagle Creek, near the Southeast corner of Section 8, T. 6 S. R. 43 E. W. M., to a point where the water as conducted in said ditch is diverted into Glendenning Creek, and thence down said Glendenning Creek into Sparta Ditch. That said Cranston and Ingle own said Hoagum Ditch from said Glendenning Creek to a point from which the quarter section corner on the North line of Section 3, T. 7., S. R. 43 E. W. M. bears north 56° 30′ west, 1401 feet distant. That all of that part of said Hoagum Ditch below said point belongs to said Sparta Irrigation Company. That said decree found that 750 miners inches of water, under six inch pressure, delivered at the place of use, was sufficient water to irrigate the lands of the stockholders of said Sparta Ditch Company. That said Sparta Ditch is 30 miles in length; that the seepage in said ditch would be great. That a reasonable seepage to be allowed said Sparta Ditch would be about 250 miners inches. That the water master of the district shall allow for seepage in the distribution of water, such an amount as such seepage aggregates, not to exceed 250 miners inches.

That the stockholders and water users from said Sparta Ditch Company are: F. W. Tallmadge, L. W. Tallmadge, Maud E. Boyd, Arthur S. Boyd, P. T. Wyatt and W. A. Wyatt, and the land to be irrigated is described in the tabulation hereinafter set forth under Inchoate Rights.''

On the 16th day of June, 1917, a written contract was executed by said Sparta Irrigation Company as party of the first part and the predecessors in interest of defendants herein, as parties of the second part, wherein and whereby the party of the first part in consideration of the sum of $1,850, and in further consideration of the covenants to be kept and performed by the parties of the second part did grant unto the parties

of the second part their heirs and assigns the perpetual right, privilege and authority [subject to the reservations and conditions thereinafter set forth] to go in and upon that portion of said Hogum Ditch in Baker County, Oregon, belonging to it, and to enlarge said portion of said ditch to any capacity which said parties of the second part may desire and to use that portion of said ditch for the conveyance of such of the waters of the West Fork of Eagle Creek as said parties of the second party may own or title to which they may hereafter acquire and also for the conveyance of any other waters which they may from other sources acquire a title or an interest in and subject to the conditions thereinafter set forth, to use said ditch for all necessary purposes connected with their operations, present or future.

By the terms of said contract of June 16, 1917, the Sparta Irrigation Company reserved unto itself all rights in and to the waters of West Fork of Eagle Creek and in and to the portion of the Hogum Ditch owned by it as defined and set forth in the decree entered in the suit between said Sparta Irrigation Company and defendants' predecessors in interest.

Shortly after the execution of the written contract last above mentioned, an oral agreement was made by the Sparta Irrigation Company, and defendants' predecessors in interest, that for the privilege of diverting the stream flow of West Eagle Creek at the head of the Hogum Ditch, defendants' predecessors would build reservoirs at Eagle and Looking Glass lakes and a feeder ditch from Main Eagle Creek to West Eagle Creek so that the Sparta Irrigation Company would have available as much water from these reservoirs at the head of their ditch as the normal flow of West Eagle Creek.

Pursuant to the provisions of the Water Code then in effect [Chap. 216, General Laws 1909; Secs. 6594 to 6672, inc. Vol. 3, L. O. L.] on the 27th day of May, 1909, certain users of the water of Powder River and its tributaries filed in the office of the State Water Board a petition requesting a determination of the relative rights of the various claimants of said stream, and its tributaries. Seventy-one contests ensued. In due course, the record of the proceeding thus inaugurated and conducted was certified to the Circuit Court of the State of Oregon for Baker County; and on the 18th day of March, 1918, a final adjudication was therein decreed.

According to said decree of March 18, 1918, the first appropriation of the waters of Eagle Creek was made in 1863, through the Hogum Ditch which was constructed over a very high divide and water was conducted through the same during that year to a point near Sanger, and was there used for placer mining purposes. According to said decree, the next appropriation of the waters of Eagle Creek was made in 1870 by William H. Packwood and Alex Stewart through what is known as the Sparta Ditch which diverted water from West Eagle Creek a mile or so above the head of the Hogum Ditch and water was conducted through said ditch to Sparta, a distance of some 30 miles in October 1871; and, at that time, the owners of the Sparta Ditch purchased the Hogum Ditch and, for many years thereafter the waters conveyed by the Hogum Ditch were turned into and used by the Sparta Ditch for mining purposes near Sparta, Oregon. This condition existed until the time when said decree was entered in 1918. At the time of the entry of said decree, the Sparta Irrigation Company was the owner of both the Sparta and Hogum Ditches, and its stock was held in trust by one George Grant as trustee. At that time the Sparta Irrigation

Company, being the first appropriator of any of the waters of Eagle Creek, was diverting from the west fork of Eagle Creek, through the said ditches, all the water flowing in said stream which the ditch was capable of carrying.

In that proceeding a large number of landowners living in Eagle Valley, who irrigated their lands from the waters of Eagle Creek including both of the plaintiff corporations, filed contests against Grant, as said trustee, and, as shown by said decree, that contest was settled by a stipulation entered into by all the parties wherein it

"was stipulated to the effect that the contestee [Sparta Irrigation Company, by Grant, Trustee,] should take all of the waters awarded it in these proceedings from West Eagle Creek and the natural tributaries thereof flowing into said stream above the head of what is known as the Sparta Ditch, and any and all of the feeders of said Sparta Ditch, heretofore and now feeding said ditch, and that said contestants may be awarded all other waters constituting Eagle Creek, including all waters of what is known as Middle Fork of Eagle Creek, and including all other source of water supply, save and except as hereinbefore mentioned. * * *"

The decree then recites:

* * * "that the contestee [Sparta Irrigation Company] is the successor in interest, and owner of the water used in connection with the Sparta & Hoagum Ditches; that in 1863 water was appropriated and thereafter used through the Hoagum Ditch, and that in November, 1870, William H. Packwood and Alex Stewart posted a notice on Eagle Creek appropriating 3,000 inches of water for what is known as the Sparta Ditch. That thereafter the Sparta Ditch was surveyed, and on the 11th day of May, 1871, construction of said ditch was begun and

water was run through said ditch to the town of Sparta, Oregon, on the 14th day of October, 1871. That said appropriation was for domestic, mechanical, mining and irrigation purposes. That upon the completion of said ditch there was at one time 800 miners inches of water delivered to the water users out of said ditch, and the diversion of said water into said ditch, at the time the same was used to full capacity, was between 1,000 and 1,500 inches. That in 1871 the Hoagum Ditch was extended to empty its waters into the Sparta Ditch, and was purchased by the owners of said Sparta Ditch at said time. That thereafter, and until the present time, said Hoagum Ditch has been used as a feeding ditch to said Sparta Ditch, and especially for the purpose of running water into said Sparta Ditch which would be picked up by said Hoagum Ditch from the melting snows during the spring thaws, and from the canyons that flowed water during the thaw, and this use was especially made at a time when the head of the Sparta Ditch and of the Hoagum Ditch were not thawed out so as to permit the diversion of water from the creek. That the early flow of the waters picked up in said thaw by said Sparta Ditch and said Hoagum Ditch, furnished a sufficient amount of water to supply said Sparta Ditch, until the heads of the ditches were thawed, out, and that thereupon the water would be delivered from the head of said ditch. That from the building of said ditch, until 1914, the water of said Sparta Ditch was sold each year by the owners thereof, for the purpose of domestic, mining, power and irrigation use. That beginning with the year 1915, the owners of said ditch proposed to apply the water from said ditch partly upon the lands described in the tabulation hereinafter, amounting to 1,500 acres; that 750 miners inches of water delivered on the land is sufficient to irrigate the lands proposed to be irrigated. That the change of use of water from sale for domestic, mining, power and irrigation use, to an irrigation use does not infringe upon the rights of any

other water user from Eagle Creek, and in making said change said George Grant, Trustee, and the Water Users from said Sparta Ditch have the right to use a reasonable time for making said change without losing their date of priority. That five years is such a reasonable time, and the lands to be irrigated in making such change shall be tabulated herein under the head of Inchoate Rights."

These lands were tabulated accordingly in the decree. All other lands then being served from the waters of Powder River and its tributaries were also tabulated in conformity to said stipulation. In said tabulation which constitutes part of said decree of March 18, 1918, the Dry Gulch Ditch Company is listed as having the right to divert through the said ditch sufficient water to irrigate 572.52 acres of land, but not to exceed a continuous flow of 1/40 of a cubic foot per second per acre with a priority date of July 10, 1894.

This listing appears on pages 182 and 183 of said decree. The stream from which diversion is to be made by the Dry Gulch Ditch Company is designated in said tabulated list as "Little Eagle Creek". It is obvious from the context of the decree that the trial court and all the interested parties were fully aware of the actual point of diversion. It appears from the testimony that Little Eagle Creek is about two miles above the head of the Dry Gulch Ditch on the opposite side of the river. The application for Enlargement Permit No. 16, to which reference is expressly made in said decree of March 18, 1918, designates Eagle Creek as the source of the proposed appropriation to be made by the enlargement of the Dry Gulch Ditch or Canal. Said application which constitutes a part of said enlargement permit specifically designates the point of diversion as south 27° east 23.70 chains from the northwest corner

of Sec. 20, T. 8 S. R. 45 E. W. M.; and states that the head gate is located within the northeast quarter of the northwest quarter of said section 20. The reference in the tabulation to the stream from which the diversion was made by the Dry Gulch Ditch Company as Little Eagle Creek was a clerical error which did not change or affect said Dry Gulch Ditch Company's priority right or right of diversion from Eagle Creek.

In said decree of March 18, 1918, it is recited:

"That the Dry Gulch Ditch Company secured a State Engineer's permit under a priority date of August 31, 1909, which permit was approved September 24, 1909, and is known as Application No. 193, Enlargement Permit No. 16."

A certified copy of the State Engineer's permit, as originally issued, is known to this record as part of plaintiffs' exhibit 3-A.

Plaintiffs' exhibit 2, which was rejected by the trial court, but was taken under the rule governing procedure in equity cases, discloses that the permit, as originally issued, was returned for correction and as corrected constitutes the State Engineer's permit mentioned in the excerpt above quoted from the decree of March 18, 1918. This corrected permit was secured by the Dry Gulch Ditch Company under a priority date of August 31, 1909, and was approved September 24, 1909, as stated in said decree of March 18, 1918. It discloses that the land to be irrigated thereunder has a total area of 2779.93 acres, and that the appropriation for irrigation purposes shall be limited to 1/80 of one cubic foot per second for each acre irrigated.

The identity of the corrected certificate [plaintiffs' exhibit 2] as being the permit recognized and referred to in said decree of March 18, 1918, is definitely estab-

lished by the priority date and the date of approval which are the same in said decree as in said exhibit 2.

The tabulation in the decree of March 18, 1918, lists the Waterbury-Allen Ditch Company as serving through its ditch 657 acres of land with water from Eagle Creek having a priority of 1891.

Plaintiffs' exhibit 3-A, in addition to the copy of certificate of water right under permit No. E-16, as above stated, is also a copy of a certificate of water right to the effect, —

"That Waterbury-Allen Ditch Company, of Richland, State of Oregon, has a right to the use of the waters of Eagle Creek, a tributary of Powder River, for the purpose of irrigation, * * * that the priority of the right hereby confirmed dates from 1891, that the amount of water to which such right is entitled for the purpose aforesaid, is limited to an amount actually beneficially used for said purposes and shall not exceed 1/40 of one cubic foot per second per acre."

The defendants, who, besides owning the Hogum Ditch, also own in severalty contiguous tracts of land on the Powder River slope some twenty miles or more from Eagle Creek, were adjudicated by said decree to have the right to the use of water for the irrigation of these lands from Powder River, Balm Creek and Goose Creek under various dates of priority from 1872 to 1909, but were not adjudicated to have any right to divert water from Eagle Creek or any of its tributaries except such as should thereafter be secured through permits from the State Engineer upon applications which had been filed prior to the entry of said decree and thereafter permits were duly issued by the State Engineer authorizing said defendants to store 300 acre-feet of water from West Eagle Creek in Echo Lake, 170

acre-feet in Traverse Lake with a priority date of June 18, 1917, as appears from defendants' exhibit L, and the right to store in Looking Glass Lake 527 acre-feet of water and in Eagle Lake 844 acre-feet of water from Main Eagle under priority dates of September 18, 1917, and November 16, 1917, as appears from defendants' exhibits Q, O, and R. They also secured from the State Engineer the right to use the water thus stored, together with the stream flow of West Eagle Creek, for the irrigation of 1386.5 acres of land as a new right and 954.5 acres of land as a supplemental right under a priority date of June 18, 1917, as appears from defendants' exhibit M, and also 397 acres as a new right and 203 acres as a supplemental right under the priority date of October 30, 1933, as appears from defendants' exhibit P.

It will thus be seen that the plaintiffs' decreed rights to divert water from Eagle Creek and its tributaries are prior in time and right to the decreed rights of the defendants or any of them except as to the right of the defendants to divert and use the water thus stored, and, as to which, defendants' rights are superior to all other persons appropriating water from Eagle Creek or any of its tributaries.

■ It is argued by defendants that plaintiffs, or their predecessors in interest, expressly waived and relinquished any right which they might otherwise claim to the waters of West Eagle Creek and its tributaries by a stipulation wherein they agreed to an entry of a judgment and decree,

"Awarding to said contestee" [George Grant, Trustee] all the waters of West Eagle Creek and the natural tributaries thereof, flowing into said stream above the head of what is known as the Sparta Ditch."

We think that the decree, in that particular, clarifies the stipulation, and that the language of the decree is controlling.

We repeat that part of the decree:

"Was stipulated to the effect that the contestee should take all of the waters awarded it in these proceedings from West Eagle Creek and the natural tributaries thereof flowing into said stream above the head of what is known as the Sparta Ditch, and any and all of the feeders of said Sparta Ditch, heretofore and now feeding said ditch, and that said contestants may be awarded all other waters constituting Eagle Creek," etc.

This part of the decree was in effect a ratification of the exchange by contestants of their right to the use of the water from West Eagle for the relinquishment on the part of the Sparta Irrigation Company, appearing by its trustee, of its right to the water of Eagle Creek. The effect of it was not to destroy either right thus exchanged nor to change the respective priorities of the parties thereto. It certainly was not a grant of any right to the defendants in the instant case.

We cannot agree that, by the use of the word "Little" in listing the name of the creek from which defendants were to obtain water as Little Eagle Creek the trial court signified or intended to decree that there was any waiver by any party hereto. As stated, we hold that it was an immaterial clerical error.

The defendants also contend that they are entitled to divert through the Hogum Ditch all the natural flow of West Eagle Creek at said point through the arrangement entered into by them with the former owners of the Sparta Ditch. The defendants also claim said right of diversion by prescription; and also claim that plain-

tiffs ought not to be permitted to contest said right by reason of facts constituting estoppel by conduct.

The arrangement with the former owners of the Sparta Ditch, as above shown, consisted of an exchange of waters. For the Sparta Irrigation Company's right to divert water from West Eagle Creek defendants' predecessors exchanged impounded water from Eagle and Looking Glass Lakes.

As shown above, defendants' predecessors were appropriators subsequent to the Sparta Irrigation Company and to plaintiffs herein. A subsequent appropriator may assert the right to take the waters of the stream from which the prior appropriation has been made and give the prior appropriator in return therefor other water from a different source, but of like quantity and quality delivered at such a place that the prior appropriator can make full use thereof without being injured in any way. 67 C. J. Waters, p. 1018, § 445, citing *Mt. Shasta Power Corporation v. McArthur,* 109 Cal. App. 171, 292 P. 549, and *United States v. Caldwell,* 64 Utah 490, 231 P. 434.

"The appropriation of water to a beneficial use is founded upon the rule of necessity, which, when satisfied, becomes the measure of the right, whereupon subsequent appropriators may use the surplus of that to which the prior appropriator is entitled, when not necessary to his use." *Mattis v. Hosmer,* 37 Or. 523, 529, 530, 62 P. 17, 19.

"An owner of a water right by prior appropriation cannot change his point of diversion if such a change will injuriously affect other users on the stream, nor can he sell it separately from the land either to change the point of diversion, to make a new or different use of it to the injury of other users, or to secure the same priority. *In Re North Powder River,* 75 Or. 83, 90, 144 P. 485, 146 P. 475.

■ As to the priority of the right of defendants' predecessors in interest to divert the water of West Eagle Creek, it remained the same after the exchange of the impounded waters for the water from the stream, as before that exchange was made. Defendants' priority remained subsequent and subordinate to the priority of plaintiffs as well as to that of the Sparta Irrigation Company.

> * * * "the water being appurtenant to the land to which it was appropriated if transferred to another separately from the land, cannot carry its priority to the new owner, but would become a new appropriation as of that date" *In Re North Powder River,* supra.

By that exchange, defendants acquired no right or interest adverse or prejudicial to plaintiffs' right to the use of the water of West Eagle Creek.

As to defendants' claim that they have acquired a right by prescription superior to that of plaintiffs to divert the water of West Eagle Creek, we think that such claim is not supported by the record.

■ It is elementary that the elements of title by prescription are open, visible and continuous use under a claim of right, adverse to and with the knowledge of the owner.

The supply of impounded water in the same quantity and of the same quality as that of the normal flow of West Eagle Creek in exchange for the right to divert the waters of West Eagle Creek at a point two miles above the point where the impounded waters were brought into that creek was in nowise prejudicial or adverse to the rights of plaintiffs.

The Sparta Irrigation Company made no further use of its ditch or of the water involved in this controversy after the fall of 1926, or the spring of 1927.

It appears from the testimony that the Dry Gulch Ditch Company's ditch was in operation thirty-five years before the trial of this case in the circuit court and has been in continuous operation ever since.

It also appears from the testimony that the Waterbury-Allen Ditch Company's ditch was completed in 1898, and has been in continuous operation ever since.

During these respective intervals of time, these ditch companies, plaintiffs herein, respectively, have operated said ditches by diverting the water of Eagle Creek continuously, openly, visibly and under a claim of right. Not until 1928, when defendants gave them notice, after the discontinuance of operation by the Sparta Irrigation Company, that water impounded by defendants would be furnished only as an accommodation, was there any assertion by defendants of a right to the water of West Eagle Creek hostile or adverse to plaintiffs' right thereto.

Thus it will be seen that, for more than ten years prior to defendants' said notice to plaintiffs of an adverse claim thereto, plaintiffs operated their ditches and diverted the water of Eagle Creek.

This suit was instituted on October 6, 1936. It is not clearly shown that ten years elapsed after the Sparta Irrigation Company discontinued the use of the ditch before the institution of this suit.

In 1928, plaintiffs, being in need of water from Eagle Creek, communicated with defendants and were informed that defendants would turn some water down as an accommodation.

Plaintiffs refused to accept the water merely as a matter of accommodation, and retained counsel to institute proceedings to enjoin and restrain defendants from diverting the water of West Eagle Creek

to plaintiffs' prejudice. An issue of fact is presented with reference to what then occurred.

Plaintiffs contend that by means of a telephonic conversation an agreement was made between plaintiffs' counsel and F. A. Phillips, one of the defendants.

Mr. W. H. Strayer testified, as one of the plaintiffs' counsel, that he told Mr. Phillips by telephone that plaintiffs would institute suit to enjoin defendants from diverting the water of West Eagle Creek, unless it was agreed by defendants that defendants would supply for plaintiffs' use an amount of impounded water equal to the normal flow of West Eagle Creek; and that in answer to that proposition, Mr. Phillips assented to it.

The telephonic conversation, above mentioned, was detailed by Mr. Strayer as a witness for plaintiffs, and the occurrence in Mr. Strayer's office, as stated by him, was corroborated by two other witnesses.

Mr. Phillips denied that such an agreement was made and testified that he had no remembrance of the telephonic conversation. We are impressed with plaintiffs' version of this issue. Mr. Strayer's positive statements outweigh Mr. Phillips' lack of memory. As stated, the instant case was instituted on October 6, 1936, or approximately only eight years after the telephonic conversation between Mr. Strayer and Mr. Phillips.

Mr. J. W. Case testified that on August 19, 1935, at the instance of plaintiffs, he was sworn in as Assistant Water Master for the purpose of seeing "that Looking Glass reservoir lake and Main Eagle Lake furnished as much water as West Eagle would flow". Mr. Case also testified that he went up to Looking Glass Lake first and found that it was already running out and the next day he went up to Main Eagle Lake

and it was running a good flow of water; and that he turned down what he thought would be about half of the lake flow, put boards in it and turned down West Eagle about half of West Eagle water to make about what the lake was furnishing. A day or two later, according to his testimony, Mr. Case went back to the head of the ditch and a board had been taken out and he put it back and put a notice on the head gate, saying to leave it alone. He further testified that after that he again visited Main Eagle Lake and diverted all its water into West Eagle Creek by putting in boards.

■ In the light of the foregoing testimony, we think continuous and adverse use of the water of West Eagle Creek by defendants has not been shown for a sufficient length of time to give defendants title thereto by prescription.

■ Assuming that plaintiffs knew that defendants' predecessors in interest were constructing the reservoirs and feeder ditch mentioned and were improving and repairing Hogum Ditch, and, in doing so, were expending large sums of money, still it would not be inconsistent with plaintiffs' present claim of right to the water of West Eagle Creek or water in like amount and quality from the reservoirs of defendants subject only to the prior right thereto of the Sparta Irrigation Company.

■ The rights of prior appropriators from a stream cannot be impaired by subsequent appropriations of water from its tributaries. 67 C. J., Waters, p. 1006, and cases cited in note 75; Weil, Water Rights of the Western States (3d Ed.) Vol. 1, pp. 3589, § 337; Kinney on Irrigation and Water Rights, Vol. 3, p. 2820.

Plaintiffs and their predecessors in interest were and are prior appropriators from Eagle Creek of which stream West Eagle Creek is a tributary. De-

fendants and their predecessors in interest were and are subsequent appropriators of water from said tributary, hence, defendants have no right to impair, restrict or interfere with plaintiffs' right to the water of West Eagle Creek.

■ Defendants call attention to the distinction between impounded water and water flowing in a natural stream. This distinction is stated in the two cases which defendants cite, namely, *Vaughan v. Kolb*, 130 Or. 506, 280 P. 518, and *Jones v. Warmsprings Irrigation Dist.*, 162 Or. 186, 91 P. 2d 542. In the latter of these two cases, we find the following quotation from Vol. 1, Wiel, Water Rights (3rd Ed.) p. 36, § 37.

"The water taken into an artificial structure and reduced to possession is private property *during the* period of possession. When possession of the actual water or *corpus* has been relinquished or lost, by overflow or discharge after use, property in it ceases; the water becomes again nobody's property and re-enters the negative community, or 'belongs to the public,' just as it was before being taken into the ditch. It has no earmarks to enable its former possessor to follow it and say it is his. The specific water so discharged or escaped is abandoned; not an abandonment of a water-right, but an abandonment of specific portions of water, viz., the very particles that are discharged or have escaped from control."

Confined to the question whether plaintiffs acquired by prescription the right to the waters when impounded or stored in the lakes which were converted by defendants into reservoirs, these two cases sustain defendants' position that plaintiffs did not obtain a prescriptive right to the water so impounded by defendants; but, in the view of the writer, these cases support plaintiffs' claim that while the normal flow

of West Eagle Creek remained the same after as it was before the exchange was made by the Sparta Irrigation Company with defendants whereby the Sparta Irrigation Company received impounded water and defendants diverted water from the stream, plaintiffs' rights to the water of the stream were in nowise adversely affected and therefore plaintiffs had no cause of complaint.

■ In other words, the substitution of impounded water in the same quantity and of the same quality for water normally flowing in the natural stream does not constitute a trespass or infringement upon or a restriction of the rights of lower appropriators.

The distinction between the instant case and the case of *Wood River Power Company, v. Arkoosh,* 37 Idaho, 348, 215 P. 975, is that in the Idaho case defendants sought to change the point of diversion of certain water belonging to one of the defendants from plaintiffs' tailrace to plaintiffs' forebay and claimed the right to divert water in excess of ten inches from plaintiff's forebay, defendants' right to divert ten inches from plaintiffs' forebay not being controverted.

In the case at bar, plaintiffs seek to enjoin defendants from diverting water naturally flowing down a tributary to a stream to the waters of which plaintiffs have a right prior in time to the rights thereto of defendants. There is no claim on plaintiffs' part of a right to divert the waters at the reservoirs constructed by defendants.

*Scott v. Fruit Growers Supply Co.,* 202 Cal. 47, 258 P. 1095, holds that an upper riparian proprietor has no right to divert the water of a tributary to a stream to the prejudice of lower riparian owners, the tributary in that case being Bagwell Springs. Defendant

claimed to have acquired the right by prescription to make such diversion.

The court held that inasmuch as the evidence disclosed that defendant in irrigating his ranch merely diminished the water for a period of from 24 to 48 hours and thereafter the water returned to the creek for the use and benefit of the lower riparian owner, defendant gained no prescriptive right against the lower riparian owners.

The case of *Dontanello v. Gust*, 86 Wash. 268, 150 P. 420, held that the filing of a claim in 1891 to the waters of the spring in suit and the right to conduct the same through an irrigation ditch, the construction in 1902 of a ditch for the purpose of carrying all waters from this spring to his land, the construction of a dam about 250 feet below the spring, which dam was the intake for the ditch, and the operation of said ditch each year beginning with 1892 and continuing until 1915, in which operation all of the water from said spring was diverted into said ditch and used by plaintiff for the irrigation of his land, gave plaintiff title by prescription to the waters of said spring.

In *Dontanello v. Gust*, supra, we find the following rule stated:

"In order that title to waters may be acquired by adverse user, it is necessary that during the entire statutory period there shall have been an infringement upon another's right to such an extent that such other would have had a cause of action against the claimant."

To this point the following cases are cited: *Davis v. Chamberlain*, 51 Or. 304, 98 P. 154; *Perry v. Calkins*, 159 Cal. 175, 113 P. 136; *Ison v. Sturgill*, 57 Or. 109, 109 P. 579, 110 P. 535; and *Smith v. Duff*, 39 Mont. 374, 102 P. 981, 133 Am. St. Rep. 582.

While at this point we are reviewing authorities, cited by defendants, we venture to remark that the legal rule last above quoted from *Dontanello v. Gust,* supra, is invoked by plaintiffs in resisting defendants' claim that defendants have acquired by prescription the right of diversion which plaintiffs seek to enjoin. This rule is applicable for the reason that as long as water equal in quantity and quality to that diverted was being returned to the stream in question above plaintiffs' intake, plaintiffs could have no right of action for infringement, trespass, interference or restriction upon their rights as appropriators of the waters of Eagle Creek and its tributaries.

In defendants' discussion of the exchange contract between the Sparta Irrigation Company and the defendants, it is urged that there are but two appropriations from West Eagle Creek, namely, that of the Sparta Irrigation Company under its 1870 priority and that of defendants under their 1917 priority. That argument is based upon the assumption that plaintiffs waived and relinquished their right to the water of West Eagle Creek by consenting to that portion of the decree which declares that the Sparta Irrigation Company, by its trustee Mr. Grant, shall take all of the water granted to that company from West Eagle Creek. We do not construe that as a waiver or a relinquishment on plaintiffs' part. It was pursuant to an agreement between defendants and the Sparta Irrigation Company that, because defendants sought to divert water from West Eagle Creek at a point above the Sparta Irrigation Company's intake therefrom, the defendants in exchange for that privilege would supply water of like kind and quantity to that of West Eagle Creek's normal flow at a point above the Sparta Irrigation Company's intake therefrom. That agree-

ment was in effect and performed until the Sparta Irrigation Company discontinued its operations in the fall of 1926 or the spring of 1927.

Plaintiffs were not thereby deprived of any water which they would have otherwise received. We think that there were four appropriations from West Eagle Creek besides that of the Sparta Irrigation Company, namely, the appropriation of the Dry Gulch Ditch Company with a priority of 1891; and that of the Dry Gulch Ditch Company with a priority of 1909; the appropriation of the Waterbury-Allen Ditch Company with a priority of 1891, and the appropriation of defendants with a priority of 1917. While an exchange of waters is permitted, such exchange cannot be given the effect of changing priority rights to the extent that one holding an older priority before such exchange thereafter should be deemed no longer the owner of a senior priority but only that of a priority junior to the other party to such exchange.

The decree of the circuit court dismissing this suit is reversed; and a decree is hereby entered herein enjoining and restraining defendants Orin Hutton, Fred A. Phillips, Charles F. Duby, Wayne Phillips and Joseph Jackson, and all persons acting or holding under, by or through them, or any of them, from diverting the water of West Eagle Creek or of Eagle Creek to the prejudice, diminution, impairment or interference with the rights of plaintiffs to the use of the waters of said streams, namely, the right of the Dry Gulch Ditch Company to divert sufficient water to irrigate 572.52 acres of land, but not to exceed a continuous flow of 1/40 of a cubic foot per second per acre with a priority of July 10, 1894; and said Dry Gulch Ditch Company's further right with a priority of August 31, 1909, to divert water from said streams not exceeding 1/80 of a cubic foot

per second per acre for the irrigation of 2779.93 acres of other lands belonging to its stockholders; and the right of the Waterbury-Allen Ditch Company to divert waters from said streams for the benefit of its stockholders sufficient to irrigate 637 acres of land but not to exceed 1/40 of a cubic foot per second per acre with a priority date of 1891.

It is further ordered that plaintiffs have and recover judgment against defendants last hereinabove named for plaintiffs' costs and disbursements herein.

And it is further ordered that, except as above stated, neither party hereto recover costs or disbursements herein.

The late Mr. Justice RAND did not participate in this opinion.